Breitel, J.
Defendant, who was 18 years old at the time of his arrest, appeals from a determination adjudging him a youthful offender on his plea of guilty. He was arrested for possession of a pistol by a detective who had been alerted by an anonymous telephone call. A motion to suppress the evidence was denied after a hearing in Criminal Court, Queens County *337 (Schreckinger, J.). Thereafter, defendant pleaded guilty and was committed to Elmira Reception Center. The Appellate Term, Second Department, affirmed the (conviction without opinion, one Justice dissenting.
Defendant contends that the seizure of the pistol was illegal because the arresting detective did not have a warrant and did not have “ reasonable grounds ”, prior to the search and arrest, to believe that a crime was being committed in Ms presence by defendant (Code Crim. Pro., § 177).
It is concluded that while defendant may be correct that the sources of the detective’s belief that defendant possessed the pistol did not constitute “reasonable grounds ” for the search and the subsequent arrest, nevertheless, the search was valid under the “ Stop and Frisk ” amendment to the Code of Criminal Procedure (§ 180-a, eft. July 1,1964). The search at issue here occurred on December -2, 1964. The detective had at least a reasonably based suspicion that defendant was committing a crime and was, therefore, entitled to “ stop” Mm. Moreover, the detective was also warranted in suspecting that the defendant possessed a dangerous weapon which threatened the life of the detective as well as others in the immediate vicinity of defendant. Consequently, the seizure of the weapon was proper and the determination should be affirmed.
The detective, Richard Delaney, was the only witness at the hearing on the motion to suppress. He testified that on the day of the arrest he received an anonymous telephone call at the police station informing him that ‘ ‘ there was a male, white youth on the corner of 135th and Jamaica Avenue * * * [who] had a loaded 32 calibre revolver in Ms left hand jacket pocket ”. The caller also stated that the youth was “ eighteen ”, had “ blue eyes, blond hair ” and was wearing “ white chino-type pants ”.
Delaney then proceeded to that location and observed from across the street an individual who “ matched perfectly” the description given to Delaney by the informer. The youth (defendant) “ was standing in the middle of a group of children that had just finished bowling”. Thereupon, Delaney crossed the street, “ took Mm [defendant] by the arm and put Mm against the wall and took the revolver out of Ms left-hand jacket pocket ”. Delaney did not notice any bulge in the defendant’s *338 pocket prior to the search as the weapon [1] ‘ was inside the lining of the jacket ”.
On cross-examination, Delaney testified that he had never before arrested defendant and that he had never seen him in the neighborhood. The court concluded that: “A gun which is loaded is a very dangerous instrument, and the officer in his discretion as an officer had a perfect right, in order to protect himself and protect everybody else in the Circumstances. Having reasonable grounds to believe this was the defendant who had the gun he had a perfect right to search him at the time.”
Arguably, under People v. Malinsky (15 N Y 2d 86, 93-94) and People v. Coffey (12 N Y 2d 443, 452, cert. den. 376 U. S. 916) Delaney did not have “ reasonable grounds for believing ” that defendant possessed a pistol. The information received from the anonymous caller was not substantiated by “ the informer’s own character and reputation ” or' by the “ separate, objective checking of the tale he tells ”, other than confirmation of the fact that defendant was standing at 135th Street and Jamaica Avenue (People v. Coffey, 12 N Y 2d 443, 452, supra). Even considering the exigent circumstances, then, defendant would be correct that the search was illegal if it can be justified only by his arrest (see People v. Malinsky, 15 N Y 2d 86, supra; cf. People v. Teams, 20 A D 2d 803, apps. dsmd. 14 N Y 2d 943; 25 A D 2d 496, affd. 18 N Y 2d 835).
The question then remains whether the search was valid under the “Stop and Frisk ” law, section 180-a of-the Code of Criminal Procedure, which reads:
“ 1. A police officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or any of the crimes specified in section five hundred fifty-two of this chapter, and may demand of him his name, address and an explanation of his actions.
“ 2. When a police officer has stopped a person for questioning pursuant to this section and reasonably suspects that he is in danger of life or limb, he may search such person for a dangerous weapon. If the police officer finds such a weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person. ’ ’
*339 This court recently upheld the constitutionality of section 180-a in People v. Peters (18 N Y 2d 238)[1] and People v. Sibron (18 N Y 2d 603)[1].
In the Peters case, as in People v. Rivera (14 N Y 2d 441, cert. den. 379 U. S. 978), the “problem” (i.e., the applicability of the statute) was divided into “ two stages: the legality of the detention and the legality of the frisk ” (18 N Y 2d, supra, p. 242). With respect to the “ detention” involved in the instant ease, it seems clear that Delaney had at least a reasonable suspicion that defendant was committing a crime when he first observed defendant from across the street. As Delaney testified, the description of defendant given to him by the informer matched ‘ ‘ perfectly ’ ’ with his own observations. To that extent, then, the information was correct, and this substantiation justified Delaney’s suspicion that the remainder of the information might also be correct. In acting upon this assumption, Delaney was “ exercising a reasonable and necessary police power for the prevention of crime and the preservation of the public order ” — a power which was recognized at common law and has now been codified in section 180-a (People v. Peters, 18 N Y 2d, supra, p. 243).
This case raises a very serious problem which has not yet been faced directly under the newly evolved rules excluding evidence obtained unlawfully under the principle in Mapp v. Ohio (367 U. S. 643). There are exigencies affecting life, limb, or grave property damage in which the police receive information of crime, not sufficient to establish probable cause for arrest and incidental search, and yet which, to any reasonable man, demand the taking of police action to prevent serious harm. In such cases it is not enough to say that nothing should be done, or that if something is done, the resultant evidence should be suppressed. To do nothing is to succumb supinely to serious injury to members of the public or to the State itself, sincerely believed to impend, particularly as the test for action is supposed to be what a reasonable man would do under the circumstances (see Ker v. California, 374 U. S. 23, 34-35; Johnson v. United States, 333 U. S. 10, 13-14). To tolerate unconstitutional action as a matter of necessity, as some argue, *340 but then to reject use of the evidence obtained, is hardly a proper way to justify illegal conduct as necessary, on the one hand, but to limit, on the other hand, the consequences of those actions as illegal. Needless to add, the serious problem is suggested only in cases involving serious personal injury or grave irreparable property damage and not by the problems associated with the enforcement of sumptuary laws, such as gambling, and laws of limited public consequence, such as narcotics violations, prostitution, larcenies of the ordinary kind, and the like. In this case a loaded pistol was involved. And one could hypothesize parallel cases involving explosives, poisons, or the larceny of an irreplaceable classic work of art. The presence of the suspect among a group of children is a particular circumstance suggesting that the occasion was not one in which a preliminary interrogation and .perhaps a limited frisk before search was indicated, if the safety of the children or the police officer was to be respected. For the police to have ignored the information received is not an acceptable thesis, despite the anonymity and, therefore, the undetermined reliability of the source.
The discussion is not whether exigent circumstances justify a departure from constitutional limitations. That view is impermissible. The point is that the Constitution forbids “ unreasonable M searches and what is reasonable is determined by the circumstances and the exigencies are not to be ignored (see Camara v. Municipal Ct., 387 U. S. 523, 538-539).
With one exception, the decisions of this court passing upon the nature or quantum of reasonable suspicion which will suffice to support the temporary detention of a suspect (either under § 180-a or at common law) have involved only those situations where the suspect has acted in a suspicious manner in the presence of the officer (People v. Peters, supra [:two unknown men creeping about an apartment house]; People v. Sibron, supra [defendant observed speaking to known narcotics addicts]; People v. Pugach, 15 N Y 2d 65, cert. den. 380 U. S. 936 [circumstances not revealed]; People v. Rivera, supra [defendants observed repeatedly peering in window of bar in dangerous neighborhood and moving rapidly away after seeing officers]). In People v. Teams (supra) the arrest *341 ing officers did detain and search the defendant on the basis of two anonymous telephone calls informing the police that a man, named u Big Jim ”, was firing a gun on the street. The defendant in that case, however, was known to the arresting officer- as the ‘ ‘ enforcer ’ ’ of the local area. Under these circumstances, the Appellate Division held that the calls constituted “ reasonable grounds ” for belief that the defendant had committed a crime. This court affirmed with a memorandum, citing the Peters and Rivera cases (18 N Y 2d, supra, p. 837).
■ There are decisions from other jurisdictions in which detention (as opposed to arrest) has been upheld in similar and sometimes less suspicious circumstances than those involved here (see State v. Freeland, 255 Iowa 1334 [known informer’s tip]; State v. Zupan, 155 Wash. 80, 87-89 [anonymous tip and suspicious conduct]; Busby v. United States, 296 F. 2d 328, 329-330 [9th Cir.], cert. den. 369 U. S. 876 [anonymous call and traffic violation by suspect]; United States v. Vita, 294 F. 2d 524, 531 [2d Cir.], cert. den. 369 U. S. 823 [accusation by suspect’s former paramour]).
In other cases, the information did not emanate from known or unknown third persons, but the grounds for the arresting officers’ suspicions were no more indicative than those present here (Goss v. State, 390 P. 2d 220, 223-224 [Alaska], cert. den. 379 U. S. 859 [defendants drove away from side of building at night with lights off]; People v. Beverly, 200 Cal. App. 2d 119, 125 [Dist. Ct. App.], [ear left area not ordinarily open at night]; State v. Gulczynski, 32 Del. 120, 123 [officer “ suspected ” defendant was carrying alcohol]; Commonwealth v. Hicks, 209 Pa. Super. Ct. 1, 7 [suspect stopped who met ‘ ‘ approximately the description ” of wanted burglar]).
Assuming that Delaney did have at least a reasonably based suspicion that the defendant was committing a crime, not only warranting but requiring some kind of police action, it follows that under the present rules he had a right to “ search ” defendant for the weapon upon which the suspected crime was predicated. Under the circumstances, the pistol was not only a threat to Delaney’s life but to those who surrounded defendant at the time he was stopped. Under the literal language of the statute, then, Delaney’s “ search ” of defendant was justified.
*342 A difficulty is that both the Peters and Rivera cases held that the “ permissible search ” following the “ stop ” allowed under common law and section 180-a should be limited to a “ frisk ” — a “patting of the exterior of one’s clothing” (People v. Peters; 18 N Y 2d, supra, p. 245; People v. Rivera, 14 N Y 2d supra, p. 446). In fact, the Rivera case distinguished a “ frisk ” from a “ full blown search ” and held that, as the former was a lesser invasion of privacy, it 16 may be justified as am incident to inquiry upon grounds of elemental safety and precaution which might not initially sustain a search ” (14 N Y 2d, supra, pp. 446-447).
• In the case at bar, it is clear that Delaney did not frisk defendant. As the detective had been told that the pistol was in defendant’s left-hand jacket pocket, he chose to make an immediate search of that area rather than engaging in the routine frisk. Under the circumstances this may well have been the correct procedure, or at least a reasonable alternative procedure, but it probably exceeded the limitations of the Peters and Rivera opinions.
The fact remains, however, that, in all but one of the court’s decisions on this point, the arresting officers engaged in “ searches ” rather than “ frisks ” in order to obtain inculpating evidence. In People v. Pugach (supra), the evidence was discovered in a closed briefcase. The officer in People v. Sibron (supra), without first frisking the.defendant, reached into his pocket and pulled out the narcotics. In People v. Teams (supra) it appears only that the officers “ searched ” Teams and found a revolver. And even in People v. Peters (supra), where the officer initially frisked the defendant and felt something hard, this court held that the officer did not have “ probable cause ” to make the arrest until he actually reached into the defendant’s pocket, withdrew, and identified the burglars’ tools. In the Rivera case, on the other hand, the court found that the officer had probable basis to search the defendant’s pocket once the frisk had revealed the likely presence of a weapon.
In short, there is ample authority to uphold the legality of the search in this case.
Even assuming that under normal circumstances the “search” allowed by section 180-a should be limited to a “frisk”, the action of the detective in this case was proper, *343 because of the additional circumstances. Delaney had a reasonably based suspicion not only that defendant was carrying a pistol but also that the weapon was located in his left-hand jacket pocket. It would seem unreasonable to require an officer in that situation to engage in a preparatory and undoubtedly dangerous frisk — -particularly in view of the fact that defendant was standing in the middle of a group of children at the time of the search.[2]
It is recognized, however, that using anonymous information as a basis for intrusive police action is highly dangerous. To limit its use to exigent circumstances the police action must relate to matters gravely affecting personal or public safety or irreparable harm to property of extraordinary value. As noted earlier, it should not extend to all contraband or criminal violations. And, of course, the credibility of the police in claiming anonymous information should be subject to the most careful and critical scrutiny, unless abuse should merit or lead to still greater restrictions on police actions. Moreover, the police should be required to make contemporaneous or reasonably prompt detailed records of any such communications which should be subject to inspection and examination on a suppression hearing on the issue of credibility. It would be unfortunate if the people must be subject to the mercy of the criminal because of the limited and nonlethal risks arising from the conduct of the anonymous informer or from the conduct of police too gullible or too crafty.
Accordingly, the judgment of the Appellate Term should be affirmed.

. The. Supreme Court has noted probable jurisdiction in these cases, but they have not been argued. (386 U. S. 980; 386 U. S. 954.)

. Under the “ Stop and Frisk ” section of the A. L. I. Model Code of PreArraignment Procedure, the “ search ” need not he confined to a “ frisk ”. The applicable section would allow an officer who has stopped any person to “search ” such person and his immediate surroundings “ only to the extent necessary to discover any dangerous weapons which may on that occasion be used against the officer” (Tentative Draft No. 1, § 2.02, subd. [5]).