STATE OF NEW JERSEY IN THE INTEREST OF H. B., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Submitted January 20, 1976—Decided February 25, 1976.

Before Judges LYNCH, LARNER and HORN.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for juvenile-appellant (*Mr. Louis R. Vinci,* Assistant Deputy Public Defender, on the brief).

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for State of New Jersey (*Ms. Patricia J. Arons,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

LARNER, J. A. D. Defendant was adjudicated a juvenile delinquent for possession of a revolver in violation of *N. J. S. A.* 2A:151–41. He urges as the sole ground for reversal error in denial of his motion to suppress the gun which was taken from his person by the police.

At the suppression hearing the judge found the following operative facts which are supported by the credible evidence and accepted by us as a basis for decision. *State v. Johnson,* 42 *N. J.* 146, 162 (1964).

On December 16, 1974 Patrolman Finn of the Newark Police was on duty in a radio car when he received a radio dispatch from police headquarters that a black individual wearing a black hat, black leather coat and checkered pants was in Ray's Luncheonette at 407 South Orange Avenue with a gun in his possession.

Officer Finn and his partner proceeded to the location. As Finn entered the front door he saw approximately 15 persons in the luncheonette. He also observed a black man with a black hat, black leather coat, checkered pants and sneakers seated in a rear booth with three girls.

He thereupon walked up to the booth and told the male occupant, identified as defendant, to stand and put his hands on the wall. Finn then patted him down or frisked him, and as he was doing so he felt an object in the right hand coat pocket which felt like a gun. He reached into the pocket and removed a .32 caliber revolver.

The trial judge sustained the validity of the pat down and search and denied the motion to suppress. Defendant urges that the warrantless search was unreasonable and in violation of the Fourth Amendment because of the absence of probable cause which would normally sustain the validity of a search warrant.

This position overlooks a recognized exception to the norm of probable cause where the initial contact between the police officer and the suspect consists of a limited search for protective purposes by way of frisk or pat down rather than a full-blown search. The landmark case authorizing a limited search by way of frisk for weapons is *Terry v. Ohio,* 392 *U. S.* 1, 88 *S. Ct.* 1868, 20 *L. Ed.* 2d 889 (1968). See also, *State v. Lakomy,* 126 *N. J. Super.* 430 (App. Div. 1974).

Chief Justice Warren, writing for the majority in *Terry,* noted that the Constitution does not forbid "all searches and seizures, but unreasonable searches and seizures." 392 *U. S.* at 9, 88 *S. Ct.* at 1873, 20 *L. Ed.* 2d at 899, quoting from *Elkins v. United States,* 364 *U. S.* 206, 222, 80 *S. Ct.* 1437, 1446, 4 *L. Ed.* 2d 1669, 1680 (1960). In sustaining a limited search for weapons in that case the court in *Terry* pointed out:

The crux of this case, however, is not the propriety of Officer Mc-Fadden's taking steps to investigate petitioner's suspicious behavior, but rather, whether there was justification for McFadden's invasion of Terry's personal security by searching him for weapons in the course of that investigation. We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause

for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. [392 *U. S.* at 23-24, 88 *S. Ct.* at 1881, 20 *L. Ed.* 2d at 907-908]

In arriving at the balance to be struck between the constitutional guarantees of a defendant and the necessity for a law enforcement officer to protect himself and other prospective victims of violence, the court held that there must be a narrowly drawn authority to permit a limited pat down search where the police officer has reason to believe that he is dealing with an armed and dangerous individual *"regardless of whether he has probable cause to arrest the individual for a crime." Terry v. Ohio, supra,* 392 *U. S.* at 27, 88 *S. Ct.* 1883, 20 *L. Ed.* 2d at 909 (emphasis added). It must be emphasized that the officer's belief must be reasonable under the circumstances. See also, *Adams v. Williams,* 407 *U. S.* 143, 92 *S. Ct.* 1921, 32 *L. Ed.* 2d 612 (1972).

We now proceed to apply the standards of *Terry* to the circumstances involved herein. We are satisfied that the contents of the radio dispatch from headquarters accompanied by a rather explicit description of the clothing worn by the individual, was sufficiently reliable for a reasonable suspicion by the police officer that defendant was the person referred to and that it was necessary in the process of investigation to pat him down for the protection of himself and the group of customers in the luncheonette. We further find that the officer conducted only a limited search warranted by the necessity of the occasion, and that such limited frisk revealed an object which felt like a gun. This revelation, in turn, constituted probable cause for a further search and seizure.

For the limited purpose of a search for weapons which is reasonably necessary for the protection of the life and limb of the officer and others in the vicinity, the basis

underlying the officer's action need not be derived only from his personal observations. Information in his possession from whatever source may be sufficient to support the type of reasonable suspicion required for a limited protective intrusion. So long as the data known to the officer reflects a reasonable degree of specificity as to the identity of the involved person, the possibility of his involvement in the commission of a crime and the potential for danger from a weapon, an investigating officer is warranted in conducting a protective search. Of course, in the absence of these criteria, even a limited search is not constitutionally permissible. A police officer is not entitled to search and seize every person whom he sees or whom he wishes to interrogate.

However, the absence of a "reliable informant" or other indicia of probable cause normally requisite for the issuance of a warrant or a warrantless search does not invalidate a limited intrusion for protective purposes such as that under consideration herein.

The foregoing exception, which has been carved out of the more stringent rule requiring probable cause for a valid search, is warranted and reasonable under constitutional dictates because of the exigencies affecting the life and safety of a law enforcement officer and the public in general. It is no less than reasonable that some police action be taken to prevent serious harm. Where a weapon or explosive is involved it would be folly to say that the police should be compelled to ignore information, though from an anonymous source, and do nothing to protect the public under penalty of the suppression of evidence if they do what their duty reasonably demands.

In the case of *People v. Taggart,* 20 *N. Y.* 2d 335, 283 *N. Y. S.* 2d 1, 229 *N. E.* 2d 581 (1967), app. dismissed 392 *U. S.* 667, 88 *S. Ct.* 2317, 20 *L. Ed.* 2d 1360 (1968), the Court of Appeals of New York sustained a search on facts which parallel those in the case at bar, including the fact that the police information came from an anonymous telephone call. The court sustained the search as valid under

the New York "Stop and Frisk" law despite the absence of "reasonable grounds" for a search and arrest. The standard set forth for the validity of the search in that case is a "reasonably based suspicion" short of probable cause requiring some kind of police action to offset the threat to the life of the police officer and to those persons in the immediate vicinity.[1]

The same principles have led some courts to validate a search without a showing of "probable cause" where the exigency involved is a bomb threat at an airport. See *United States v. Moreno*, 475 *F.* 2d 44 (5 Cir. 1972), *cert.* den. 414 *U. S.* 840, 94 *S. Ct.* 94, 38 *L. Ed.* 2d 76 (1973); *United States v. Legato*, 480 *F.* 2d 408 (5 Cir. 1973), *cert.* den. 414 *U. S.* 979, 94 *S. Ct.* 295–296, 38 *L. Ed.* 2d 223 (1973).

In *Legato* the FBI received an anonymous tip over the telephone that someone carrying a bomb in an orange shopping bag would attempt to board an airplane leaving for Chicago at 4 P.M. from either the Miami or Fort Lauderdale airport. Without restating all the factual details, it suffices to note that sometime around 4 P.M. an airport ticket agent at Fort Lauderdale saw defendant carrying a bright orange shopping bag with a gift-wrapped package protruding from

---

[1]The majority of the New York Court of Appeals in *Taggart* felt that a reasonably based suspicion would justify a full search. We disagree and limit our holding to the type of protective search involved in the instant case. It is interesting to note that the *Taggart* court relied on *People v. Sibron*, 18 *N. Y.* 2d 603, 272 *N. Y. S.* 2d 374, 219 *N. E.* 2d 196 (Ct. App. 1966), in reaching its conclusion. In reversing the *Sibron* court, the Supreme Court explicitly rejected the notion that the facts in *Sibron* would have justified a full search. *Sibron v. New York*, 392 *U. S.* 40, 66, 88 *S. Ct.* 1889, 20 *L. Ed.* 2d 917, 936 (1968).

The *Taggart* court also noted that a full search probably would not have been allowed if the court followed the rule announced in *People v. Peters*, 18 *N. Y.* 2d 238, 273 *N. Y. S.* 2d 217, 219 *N. E.* 2d 595 (Ct. App. 1966), aff'd sub nom. *Peters v. New York*, 392 *U. S.* 40, 88 *S. Ct.* 1889, 20 *L. Ed.* 2d 917 (1968).

it while walking toward the gate where a 4:10 P.M. flight was scheduled to depart.

Defendant was taken into custody; and after some interrogation during which defendant and a friend submitted evasive responses, the package was opened and instead of a bomb the officials found a container of heroin. The trial court denied a motion to suppress and was sustained by the Circuit Court of Appeals. In the appellate opinion it is made clear that the current threat to public safety posed by air piracy and the destructive potential of a bomb permits the constitutional standard of reasonableness to be satisfied by applying a less stringent test than probable cause as a ground for a valid search. The court stated:

> Throughout the preceding discussion, we have implied that it is of no consequence to the result reached in this decision that an anonymous tip triggered the chain of events leading up to the stopping of Legato and Migdall and the protective search of the package for explosives. The appellants argue, however, that the action taken by the officers should not be upheld because the tip failed to meet the standards of informer reliability set forth in Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964) and Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1968). Even assuming that the tip was insufficient under *Aguilar* and *Spinelli*, we cannot agree with this argument. The criteria established to determine the reliability of an informer in those two cases applies only when the question is whether there was probable cause to arrest or probable cause for the issuance of a search warrant in the circumstances there under consideration. The instant case does not fall into either of those categories since the question here presented arises under the line of decisions growing out of Terry v. Ohio, *supra.*
>
> Moreover, Adams v. Williams reveals very plainly that the inadequacy of a tip under *Aguilar* and *Spinelli* is not necessarily fatal to an investigative stop and protective search based thereon if other factors are present to give the tip some "indicia of reliability." The two factors most prominently mentioned in *Adams* were the past reliability of the informant and the existence of on-the-scene verification of his tip. Here, although nothing at all was known about the anonymous tipster's reliability, there was on-the-scene corroboration of almost every innocent detail of his report, plus circumstances which strongly suggested the possibility of criminal activity. This corroboration gave the report sufficient indicia of reliability under Adams v. Williams, *supra,* to justify the conduct of the officers. [*United States v. Legato, supra,* 480 F. 2d at 412–413]

■ Finally, it should be noted that the principles applied herein are viable only in cases where the frisk or search is essential for the protection of life and limb of the police officer and exposed members of the public.[2] It is this present danger which cloaks such police action with the reasonableness required by the Fourth Amendment. See *State v. Dilley,* 49 *N. J.* 460 (1967); *State v. D'Orsi,* 113 *N. J. Super.* 527 (App. Div. 1971).

We therefore conclude that the search of defendant was not an unconstitutional invasion in violation of the Fourth Amendment and that the trial judge properly denied the motion to suppress.

Judgment is affirmed.

HORN, J. A. D. (dissenting). Although it is recognized that the principles governing a constitutional warrantless search are different from those governing a "frisk," the circumstances in this case were insufficient to warrant the procedures followed by the police.

As stated by my colleagues, the basis for a frisk is the protection of the police officer — that is to say, "the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry v. Ohio,* 392 *U. S.* 1, 23, 88 *S. Ct.* 1868, 1881, 20 *L. Ed.* 2d 889 (1968).

However, the rule which is laid down by *Terry* in the following language does not warrant nor authorize the action of the police in the instant case. The court there said:

Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual,

___

[2]The possession of gambling or narcotics contraband would not without more justify a protective frisk.

regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [392 *U. S.* at 27, 88 *S. Ct.* at 1883]

The *Terry* court also stated:

And in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one — whether the officer's action was justified at the inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. [at 19–20, 88 *S. Ct.* at 1879]

In the case at bar it does not appear that the officers' action was justified at its inception. The sole basis for the suspicion was an anonymous call from someone — whether it was a concerned citizen or a prankster is not known. The only claim for giving credence to the anonymous caller's message is the fact that he described the clothing worn by the suspect, a description obvious to anyone seeing the juvenile on the public street. I believe that this, without more, does not warrant the action taken by the police. Thus, the first part of the inquiry suggested in *Terry* is not answered adequately.

The second requirement laid down by *Terry* is whether a reasonably prudent man would in the circumstances be warranted in the belief that his safety or that of others was in danger. In the present case the youth was sitting in a booth with three girls under what appear to be entirely normal circumstances. There is no indication that when the police walked in and when they told him to place himself against the wall he acted abnormally in any way. In no case cited in the majority opinion were the circumstances as insubstantial as in the case at bar from the standpoint of justifying the police action.

In *Terry* the policeman testified that before the frisk he saw two men who looked suspicious and observed them for a while. Their actions were unusual — walking down the street, peering at windows, coming back and conferring — and from his training they appeared to be "casing a job, a stick up."

*People v. Taggart,* 20 *N. Y.* 2d 335, 283 *N. Y. S.* 2d 1, 229 *N. E.* 2d 581 (Ct. App. 1967), app. dism. 392 *U. S.* 667, 88 *S. Ct.* 2317, 20 *L. Ed.* 2d 1360 (1968), was pre-*Terry.* Although I believe that the circumstances there did not warrant the search, nevertheless there was at least one additional factor not present in the case at bar. The frisk was pursuant to a statute that authorized a search for a dangerous weapon where a police officer had stopped a person for questioning "and reasonably suspects that he is in danger of life or limb."

In that case the anonymous caller had not only described the youth by his outward appearance but had also specified with particularity the location of the weapon on his person, information which evidenced a peculiar knowledge on the part of the informant which possibly could be taken to add credence to the call. See *Spinelli v. United States,* 393 *U. S.* 410, 417, 89 *S. Ct.* 584, 589, 21 *L. Ed.* 2d 637, 644 (1969); *State v. Perry,* 59 *N. J.* 383, 392 (1971), where the court said: "[W]e think the information contained in the informant's tip is of such a detailed nature that it could reasonably lead a magistrate to infer that the informant had probably observed the items himself which he knew to be stolen, or had gained his information in a reliable way."

*State v. D'Orsi,* 113 *N. J. Super.* 527 (App. Div. 1971), is distinguishable. The frisk there followed a telephone call "from an informant from whom the detective had previously received reliable information." Three men in an automobile were searched. The detective's "personal observation and his police expertise" led him to believe the occupants of the car were armed. Se also, *Draper v. United States,* 358 *U. S.* 307, 79 *S. Ct.* 329, 3 *L. Ed.* 2d 327 (1958), and *McCray v.*

*Illinois,* 386 *U. S.* 300, 87 *S. Ct.* 1056, 18 *L. Ed.* 2d 62 (1967).

In *State v. Dilley,* 49 *N. J.* 460, 463–464 (1967), the frisk was unquestionably justified. In a low-income, high-crime area early in the morning a veteran member of the New Brunswick Police Department observed two men acting suspiciously — turning their heads every few steps looking to the rear. He continued to watch them as they stood between two automobiles in a municipal parking lot. As he pulled into the lot the men walked back to the street. The court noted that there was more than naked suspicion involved: "that [probable cause] is a commonsensible rather than a technical concept; and that it deals with the reasonable probability upon which officers must act quickly for the protection of society rather than with the proof beyond reasonable doubt which the State must have to proceed to trial and conviction."

*State v. Lakomy,* 126 *N. J. Super.* 430 (App. Div. 1974), is likewise distinguishable in that the call to the police which triggered the frisk was from an officer of the company on whose premises the alleged violation was occurring. The company officer who called was not anonymous. He remained at the premises to point out the suspect. As stated by the court (at 436), the informer "held a responsible position. He was an officer of the company with no apparent motive to fabricate or to rely heedlessly on baseless reports or rumor."

In *Lakomy* the court gratuitously refers to "ordinary citizen" informers to distinguish them from paid or police informers. In none of the cases cited therein for the credibility of so-called citizen-informers was the informant an unidentified telephone caller. It appears that all informed in person. In the case at bar, due to the anonymity of the caller, it is unknown whether he was a citizen informer.

In sum, the police in the instant case had a duty to investigate following the telephone call; however, such duty

does not authorize in the first instance a full-blown search. The Fourth Amendment means nothing if anyone may be searched at any time simply on the strength of an anonymous telephone call denouncing him as unlawfully armed. It was not necessary, and it was therefore illegal, for the police to act as if the reliability of the unknown caller had already been established. The circumstances did not indicate that either the police or others were in any danger from the juvenile, nor did the police officer's observation of the juvenile reveal any suspicion-evoking behavior.

The fact that the search uncovered a revolver does not justify it. *Wong Sun v. U. S.*, 371 *U. S.* 471, 83 *S. Ct.* 407, 9 *L. Ed.* 2d 441 (1963); *State v. Scanlon*, 84 *N. J. Super.* 427 (App. Div. 1964). The constitutional prohibition against unreasonable search extends to all members of society, criminal as well as law-abiding, and the only effective way to prevent unauthorized searches is to invalidate those which uncover weapons. *Mapp v. Ohio*, 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081. See the dissent of Justice Fuld in *People v. Taggart, supra.*

The current lawlessness may be a basis for police and court innovation to meet the problem, but unless we are prepared to surrender our constitutional rights such innovation must be subservient to those basic protections.

I would reverse.