Gabrielli, J.
(dissenting). The majority, by its holding, is extending the rules developed in probable cause hearings to hearings where the question is reasonable suspicion for limited frisks of a suspect. It seems to be imposing a per se rule that in order for the police to establish reasonable suspicion to frisk they will invariably have to produce the person who informed them of criminal activity. While this sort of testimony may be necessary to establish probable cause, the rule should not be extended into the area of stop and frisk, where the infringement of a person’s rights is so much less egregious.
Furthermore, in addition to establishing this hitherto unacceptable rule of law (People v Mack, 26 NY2d 311, cert den 400 US 960), the majority is denying the People an opportunity to comply with the new standard, ignoring a considerable *645 body of law which we have established. There are many instances where we have allowed the People to produce further proof after reversing a finding of probable cause (see, e.g., People v Lypka, 36 NY2d 210; People v Verrecchio, 23 NY2d 489; People v Horowitz, 21 NY2d 55; People v Cardaio, 18 NY2d 924; People v Malinsky, 15 NY2d 86). In each of these cases the initial determination of probable cause was made without testimony by the party who initially warned the police of possible criminal activity. In reversing we required further proof to establish probable cause, but gave the People an opportunity to meet the burden without summarily suppressing the evidence; and in each case determination of the appeal was withheld and the case remitted to nisi prius for further hearings on the motion to suppress, consistent with the opinion. By their decision today, the majority condemns use of this procedure without adequate explanation for the departure from the well-established prior law, resulting in further erosion of long-established judicial determinations dealing with justified and effective police procedures.
It is not necessary to here detail the circumstances prevailing in the above-cited Lypka, Verrecchio, Horowitz, Cardaio and Malinsky cases. The established principles there enunciated and followed for many years are legion and require no further elucidation. It will suffice if we quote from but one case, People v Horowitz (21 NY2d 55, 60) wherein Judge Van Voorhis, writing for an unanimous court, stated:
"The controlling principle seems to be that it is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause provided that he acts upon the direction of or as a result of communication with a superior or brother officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest. This record does not show that any of the law enforcement officers had facts before them sufficient to indicate that this anonymous informer was reliable, or that the police had other information, not derived from the informer, which was sufficient, in itself, to constitute probable cause.
"Under the procedure adopted in People v. Malinsky (15 N Y 2d 86, 96; 19 N Y 2d 262) where we withheld determination of the appeal and remitted the case to the Supreme Court for a further hearing on the motion to suppress in order that it *646 might be determined whether 'the police actually received a tip from a dependable informer, or had evidence, apart from or in addition to the informer’s communication, to establish probable cause for the arrests of the defendants’, the determination of this appeal is withheld and the case remitted to the Supreme Court, New York County, for a further hearing on the motion to suppress in accordance with this opinion” (emphasis added).
The defendant was arrested on January 23, 1973, for unlawfully possessing two weapons, a fully loaded .38 caliber revolver and a blackjack. He moved to suppress the weapons, but following a hearing the County Court Judge found that the arresting officer had reasonable suspicion that a crime was being committed, and therefore the search which uncovered the weapons was authorized (CPL 140.50, subd 3). At the hearing there was testimony by Patrolman Bassano, the arresting officer, which established that his actions were the result of information received from fellow officers, Sergeant Arlotta and Lieutenant Sabia, who told him there had been a phone call warning the police of a shootout that night near the Depot Tavern. The court further found that the police were involved as a result of a tip from one Hechinger, a party known to the police as the owner of the Depot Tavern. There was also testimony that members of the Tribe Motorcycle Club frequented that tavern and that the defendant, a club member, knew and was known to Hechinger. There was extensive testimony describing conduct that could reasonably have been interpreted as foreshadowing the predicted shootout. Upon the basis of this testimony, the Trial Judge determined that Bassano was justified in relying on the information supplied by his fellow officer to find the reasonable suspicion necessary to frisk Havelka. In these circumstances it was not felt necessary to produce Hechinger to establish the reasonableness of the police actions.
The Appellate Division remitted the case for a further hearing,[1] in order that Hechinger, the person who actually gave the information to the police, could testify and it could then be determined whether there was reasonable cause for the search. In doing so, that court concluded that Officer Bassano’s testimony alone was insufficient in these circum *647 stances, in the absence of testimony from the person who initially informed the police of the criminal activity. The majority of our court agrees with the Appellate Division to the extent that Bassano’s testimony alone was insufficient and they substantially rely upon the rationale, in part, of People v Lypka (36 NY2d 210, supra) and People v Horowitz (21 NY2d 55, supra). However, those cases dealt with the issue of probable cause to conduct a full search, whereas we are here presented with a determination of whether there was reasonable suspicion that a crime is being committed, a situation where less evidence is required (People v Mack, 26 NY2d 311, cert den 400 US 960, supra). Thus it is clear that the majority is now extending the rule appropriate for probable cause cases to situations where only reasonable suspicion is required for the police to act. By reversing the procedural device utilized by the Appellate Division in its remittal (which, as noted, the Court of Appeals has sanctioned, and indeed itself ordered, on many occasions), the majority implicitly says that the more exacting rule has applied to frisks since its inception in People v Horowitz (supra). Such a concept cannot prevail and certainly is not the law, as is clearly delineated in People v Mack (supra), decided three years following Horowitz.
People v Mack (supra) was a case where, as here, a limited frisk of defendant was conducted and a revolver was seized. The arresting officer testified as the sole witness at the suppression hearing that the basis for his suspicion was a tip from another officer. Although the officer who had described the defendant never testified,[2] we nevertheless upheld the search. The holding was based on the description by an unidentified officer, his statement that there had been three burglaries in the area, and the "furtive conduct” of defendant and another going into two buildings briefly. These facts are no more or less supportive of a reasonable suspicion than the facts here, yet the court now requires that the person supplying the arresting officer with information testify as well. This was not necessary under the rationale of Mack, and the prosecutor who conducted the suppression hearing in this case had no reason at that time to doubt that the testimony presented at the hearing was sufficient.
*648 The court’s holding today will require exhaustive testimony whenever an officer discovers an illegally possessed weapon during a frisk, despite recognition that the infringement of a person’s constitutional rights is minimal. Aside from the substantial question of whether this is mandated by the Constitution (see Terry v Ohio, 392 US 1), this appeal is especially troublesome because the result wrongly assumes that the People had an opportunity for a full and fair hearing. Since the rule being established today is a new one, it is clear they did not.
I furthermore take exception to the comment that rehearings will allow evidence to be tailored to fit the guidelines announced. This is an assumption which has no foundation in fact. There is a possibility of abuse in any procedure, yet we live in a society where we expect integrity from public officials. To develop a rule of law on the assumption that the police and prosecutors will conform their testimony to fit within new standards unwarrantedly denigrates the judicial system and cheapens us all. I prefer to maintain the belief that our public servants support the law which they have sworn to uphold and enforce.
Having determined that the remittitur was proper, I now discuss the propriety of the search that led to the discovery of Havelka’s loaded revolver.[3] There is no need to establish probable cause for the search, since the limited frisk performed by Patrolman Bassano is authorized by CPL 140.50 (subd 3) if the officer reasonably suspected that he was in danger of physical injury. The testimony at the second suppression hearing clearly establishes that Patrolman Bassano had sufficient grounds for performing the frisk when he did.[4]
Hechinger had called and informed the police that members of the Tribe Motorcycle Club were in and out of the tavern *649 that night, that some of them had weapons, and that he had been informed there was going to be a shootout in the area that night. He was known to the police as a local businessman whose establishment was located next to the Tribe headquarters. Acting on this tip, the police placed the area under surveillance. Within 20 minutes several events took place to corroborate the report made by Hechinger. Two or three cars and two motorcycles drove up to the Tribe headquarters. Seven or 8 young males left their vehicles and were joined by approximately 10 members exiting from the Tribe headquarters. This group, numbering 15 or 20, moved in concert down the street toward the Depot Tavern. They were dressed in dungarees with, for the most part, black leather jackets or dungaree jackets bearing the Tribe insignia. Given the additional factors that it was around midnight on a January night and that a telephone call had alerted the police to a shootout by members of the motorcycle club in the area, there were reasonable grounds to suspect that some or all members of the group were committing the crime of weapons possession.
When the small group of policemen descended to the street to confront the 15 or 20 Tribe members who were believed to be on their way to a shootout, Patrolman Bassano had good cause to fear for his own safety or the safety of others, and in this case that is sufficient (People v Moore, 32 NY2d 67, cert den 414 US 1011). There was no need for Bassano to particularize the danger he may have perceived; under these circumstances the limited infringement of a frisk is preferable to the alternative of serious injury to the officer (People v Mack, 26 NY2d 311, cert den 400 US 960, supra; Terry v Ohio, 392 US 1, 33, concurring opn by Mr. Justice Harlan, supra). The officer acted in a proper and responsible manner in making a limited pat down of the suspect’s clothing to avoid the very real possibility of danger to himself and others (People v Taggart, 20 NY2d 335, app dsmd 392 US 667).
The order of the Appellate Division sustaining the conviction should in all respects be affirmed.

. As will be demonstrated, although remittal was not necessary, the procedure there adopted followed our holding in Lypka, infra, decided 10 months earlier.

. In reply to the majority’s attempt to distinguish Lypka and Horowitz on the ground that in this case the officer was a member of the same police department and working daily with Officer Bassano, we note that in Mack the officer was never identified.

. If the frisk that uncovered the revolver was proper, the subsequent full search of defendant’s person was incident to his arrest, and therefore the discovery of the blackjack was certainly supported by probable cause.

. In relying on the testimony introduced at the second suppression hearing I do not intimate that the testimony at the first was insufficient to establish reasonable suspicion. In fact, it established that a named complainant had notified the police of criminal activity by members of a motorcycle gang who had had prior dealings with the police. Furthermore, the observations by the officers supported the suspicion that members of the gang had committed or were about to commit a crime (see People v Mack, 26 NY2d 311, cert den 400 US 960, supra). However, due to the above conclusion that the remand for a further hearing was proper, this discussion need not be confined to the testimony elicited at the first hearing.