387 So.2d 404 (1980)
IN the INTEREST OF G. A. R., III, a Child.
No. 78-590.
District Court of Appeal of Florida, Fourth District.
July 30, 1980.
Rehearing Denied October 1, 1980.
*406 Richard L. Jorandby, Public Defender, John M. Conway and Jorge Labarga, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Glen H. Mitchell, Asst. Atty. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
This is an appeal from a judgement finding appellant delinquent and committing him to the Department of Health and Rehabilitative Services for placement in an appropriate treatment program. Appellant suggests error in the denial of his motion to suppress evidence seized incident to his stop and temporary detention by police officers. We find that the police exceeded their authority under Section 901.151, Florida Statutes (1977), Florida's stop and frisk law, and consequently we reverse.
The circumstances leading to appellant's arrest occurred on a Saturday morning at approximately 11:00 A.M. An Oakland Park police officer received a BOLO (be on the lookout) which, in his words, was for
... a black male, maybe fifteen to twenty years of age, riding a green bicycle, wearing, I believe, dark pants and a dark shirt... . [T]his person appeared suspicious because of the way he was riding his bicycle, he was circling two or three times, looking into the various warehouses, which were open, although this was a Saturday.
The officer proceeded to an industrial area near 23rd Terrace and 30th Street which he characterized as a high crime area. There he observed appellant pedaling his bicycle very slowly along a public street. A circular saw was attached to the rack over the bicycle's rear fender. The officer stopped appellant, asked him why he was there and where he got the saw. Appellant responded that he had picked it up off the corner, approximately ten feet from where he was stopped, and that he was bringing it home to his father who fixed broken saws. Within a few minutes back-up officers arrived *407 and, while the first officer continued to talk with appellant, another officer took the saw to a nearby business. He plugged it in, found that it worked and, upon inquiry, determined that the saw was missing from that business. Appellant was then arrested and charged with petty theft.
Section 901.151, Florida Statutes (1977) authorizes law enforcement officers to temporarily detain a person if circumstances "reasonably indicate" that such person "has committed, is committing, or is about to commit" a crime. To justify temporary detention, "founded suspicion" in the mind of the detaining officer is required. State v. Stevens, 354 So.2d 1244 (Fla.4th DCA 1978).
Since this case involves an anonymous tip, it constitutes an exception to the general rule that "[t]he circumstances surrounding a stop `are not to be dissected and viewed singly; rather they must be considered as a whole.'" United States v. Price, 599 F.2d 494, 501 (2d Cir.1979); United States v. Oates, 560 F.2d 45, 61 (2d Cir.1977). The tip's anonymity requires that it be extricated from the admixture of information and be viewed independently. Only if found credible will it be returned to the amalgam and weighed with the whole. This approach is at odds with some of our earlier holdings and so we take this opportunity to revisit them.
In St. John v. State, 363 So.2d 862, 863 (Fla.4th DCA 1978), we discussed the weight to be ascribed to an anonymous tip and announced an all-embracing rule:
In order for a bolo to justify such a stop there must be some showing by the state at a suppression hearing that the information contained in the bolo was reliable. If the police received the bolo information from some unknown tipster, it would not carry the credibility necessary to justify reliance thereon.
St. John relied heavily upon State v. Hendry, 309 So.2d 61 (Fla.2d DCA 1975) and Lewis v. State, 337 So.2d 1031 (Fla.2d DCA 1976), cert. denied, 345 So.2d 427 (Fla. 1977), two cases which disallowed 901.151 detentions based solely on anonymous tips. This line of authority, however, was critically reevaluated in State v. Hetland, 366 So.2d 831 (Fla.2d DCA 1979), where, after a comprehensive review of stop and frisk case law, the court concluded "... that an anonymous tip can provide the basis for a valid stop." Id. at 838.
We acknowledged Hetland and to some extent adopted its holding in Isham v. State, 369 So.2d 103 (Fla.4th DCA 1979). Isham involved an anonymous telephone call to the police advising them that the defendant was on a certain street corner attempting to sell drugs to two females. The caller gave a detailed description of the defendant and his clothing. Plainclothed detectives went to the scene and spotted the defendant walking toward them. When one officer identified himself, Isham attempted to flee, but was detained and searched by the police. Analyzing the facts, the court held that the anonymous call gave the police a right, and perhaps a duty, to respond and investigate. At a minimum, the court said, this included the right to seek an interview with the defendant.[1] Next the court found that with all that had gone before, Isham's attempt to flee created a founded suspicion sufficient to justify a stop. The search, however, was found to be unwarranted. Nonetheless, the court implicitly accepted the Hetland rationale and stated "... that had the anonymous tip included information that the appellant was armed, a frisk would have been justified." Id. at 104.
The upgrading of a tip because of the mention of a gun is not new. One of the first cases to advance the proposition was People v. Taggart, 20 N.Y.2d 335, 283 N.Y.S.2d 1,, 229 N.E.2d 581 (1967), appeal dismissed, 392 U.S. 667, 88 S.Ct. 2317, 20 L.Ed.2d 1360 (1968). The New York Court of Appeals noted its reservations in permitting the use of anonymous information, but found the existing balance of interests required its use in exigent circumstances where police must respond to matters *408 gravely affecting personal or public safety or irreparable harm to property of extraordinary value. State v. Hetland, supra, carefully considered and then rejected the gun/grave danger test, finding that in the case by case evolution of stop and frisk law, "... the validity of a stop has not been measured in terms of the nature of the criminal activity involved, but rather on the information and circumstances known to the law enforcement officer." Id. at 835.
We are persuaded that State v. Hetland is a correct formulation of the law and so we join our sister court in holding that an anonymous tip can provide the basis for a valid stop.[2] We recede from the statement to the contrary in St. John v. State, supra, and from the suggestion in Isham v. State, supra, that the mere mention of a gun will justify an otherwise impermissible stop or frisk. At the same time, we emphasize that before an anonymous tip can figure in the information relied on to justify a 901.151 stop or frisk, it must contain sufficient indicia of reliability so that a reasonably prudent person would infer that its content is accurate. Each case will have to be evaluated on the basis of its own facts and ultimately the circumstances surrounding the stop will have to be considered as a whole.
Turning again to the facts of the case at bar, we find that the information given by the anonymous caller was sufficiently detailed to raise the inference that it was accurate. "Such detail carries a strong indication that the information is based on the personal observation of the informant." State v. Hetland, supra, at 839. Thus the propriety of the investigatory stop and detention must be determined in light of all of the information known to the officer and with due regard for the maxim that a trained law enforcement officer may be "... able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." Brown v. Texas, 443 U.S. 47, 52, n. 2, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 358 (1979).
Irrespective of whether the first few moments of contact between appellant and the police are characterized as "citizen-police discourse" or as a 901.151 investigatory stop,[3] it is clear that the situation quickly developed into an investigatory detention pursuant to section 901.151, Florida Statutes (1977). Its purpose was to ascertain appellant's identity and the circumstances surrounding his presence in the area. If not sooner, then certainly at this point, the police effectuated a seizure of appellant's person and implicated the requirements of the Fourth Amendment. "`[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person,' ... and the Fourth Amendment requires that the seizure be `reasonable'." United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975), quoting in part, Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).
Justice Powell, concurring in United States v. Mendenhall, ___ U.S. ___, ___, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980), indicated that

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), establishes that a reasonable investigative stop does not offend the Fourth Amendment. The reasonableness of a stop turns on the facts and circumstances of each case.
In our case the facts and circumstances which justify appellant's detention are these: (1) the information contained in the anonymous telephone call; (2) appellant's match-up with the description and mode of transportation mentioned in the telephone call; (3) the area's high crime rate; (4) the circular saw, a piece of equipment likely to be used in manufacturing or fabricating, *409 attached to appellant's bicycle; (5) the nature of the neighborhood  it was an industrial as opposed to retail area, and thus it was unlikely that appellant could have purchased the saw; and (6) appellant's highly suspicious explanation that he picked up the saw from the corner and was taking it home to his father to fix. Grouped together these facts fully constitute a "founded suspicion."
Having concluded that the investigatory detention was warranted, we turn our attention to its scope. It is well to remember that the concept of investigatory stops received constitutional approbation because of the perceived need for an effective law enforcement tool which would not unduly interfere with the individual's constitutionally protected right to be free from unreasonable searches and seizures. It grew from the balancing process between the public's need for protection and the individual's right to privacy. In striking an acceptable balance, precautions were legislatively instituted so that these stops would be confined to minimal intrusions with fixed limitations. Section 901.151(2), Florida Statutes (1977), delimits the acceptable activity:
[A]ny law enforcement officer ... may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
The statute neither contemplates nor approves the seizure of goods without probable cause. Indeed, subsection five expressly requires probable cause to believe that a detainee is armed before an officer may frisk for a weapon. Consequently, it is evident that the officers in the case at bar exceeded their authority under the statute when, during the course of the investigatory detention, they seized the saw and removed it for testing.
Stop and frisk is a pragmatic, yet constitutionally permissible response to the need for effective law enforcement. It asks that a citizen endure a modest intrusion so that an officer might pursue leads suggested by his training, knowledge and expertise. "In all situations the officer is entitled to assess the facts in light of his experience... ." United States v. Brignoni-Ponce, supra, 442 U.S. at 885, 95 S.Ct. at 2582. Once appellant was stopped, the police could have pursued several options. For example, Section 901.151(3) holds that a detention reasonably effected must also be reasonable in duration. So long as the delay was not unduly extended, there was nothing to prevent some of the officers from checking with nearby businesses while another officer continued to talk with appellant. In fact, the business from which the saw was taken was only 150 feet from where appellant was stopped. Instead, the police took the fatal shortcut of seizing the saw, an action which contravened the fundamental precept that a seizure of goods must be predicated on probable cause. Therefore, we are required to vacate appellant's adjudication of delinquency and to reverse and remand for further proceedings.
DOWNEY and GLICKSTEIN, JJ., concur.
NOTES
[1] See also, People v. Mendoza, 87 Cal. App.3d 1008, 151 Cal. Rptr. 489 (1979).
[2] See also, Sanders v. State, 385 So.2d 735 (Fla.2d DCA 1980); People v. Superior Court of Santa Clara County, 85 Cal. App.3d 1020, 149 Cal. Rptr. 349 (1978).
[3] Compare United States v. Mendenhall, ___ U.S. ___, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (Stewart, J., plurality opinion), with Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 358 (1979).