**Boyd RUSHING, Appellant,**

v.

**UNITED STATES, Appellee.**

**David CHILDS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 11458, 11538.**

District of Columbia Court of Appeals.

Argued Sept. 20, 1977.

Decided Dec. 14, 1977.

Rehearings and Rehearings en Banc Denied March 9, 1978.

---

John J. Stanton, appointed by this court, for appellant Rushing.

Robert A. Robbins, Jr., Washington, D. C., appointed by this court, for appellant Childs.

Neil I. Levy, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, William C. White and Richard W. Hausler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, GALLAGHER and MACK, Associate Judges.

MACK, Associate Judge:

In a prosecution for the possession of narcotics, defendants Rushing and Childs moved to suppress evidence obtained in the course of an allegedly illegal search and arrest. The sole witness at the hearing on the motion was Officer Cicioni who testified as follows. A woman who had furnished the police drug information before, but whose identity Cicioni did not know, called to say that two men, one of whom was wearing a white T-shirt, were selling narcotics at a specified location. A radio dispatcher, whose identity Cicioni also did not know, passed this information on to Officer Morgan who went to the site. The dispatcher then came back on and asked for someone to assist Morgan. When Cicioni arrived at the scene, Morgan was searching defendant Rushing, who had on a white T-shirt. At Morgan's behest, Cicioni then "got" Childs, who was standing nearby, and proceeded to search him. Narcotics were found on both Rushing and Childs, who were then arrested. The trial court found that probable cause existed for the search and arrest and therefore denied the motion to suppress. The principal issue on appeal is the correctness of this ruling.

■ The function of the court in passing on any motion to suppress evidence obtained in the course of a warrantless search and seizure is to determine whether, at the time of the search and seizure, the police acted reasonably. Where the police attempt to justify their action by reference to a "tip," the primary focus will necessarily be upon the reliability of the tip. However, the overall Fourth Amendment question of reasonableness clearly does not turn solely on the reliability question. For example, a tip may appear in many ways quite untrustworthy and yet be so alarming in nature as to justify police reliance thereon. *See* ALI A Model Code of Pre-Arraignment Procedure, Commentary to § 120.1 at 302–03 (1975). As the Supreme Court said in *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): "[i]nformants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation."

■ In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court elaborated a standard which is useful in evaluating the trustworthiness of hearsay in any Fourth Amendment situation. Under the *Aguilar-Spinelli* analysis, hearsay may be found trustworthy if there is proof regarding (1) the underlying circumstances from which the officer concluded that the informant was credible or his

information reliable;[1] and (2) the underlying circumstances from which the informant concluded that a crime was being committed.[2] *Aguilar v. Texas, supra* at 114, 84 S.Ct. 1509. If there is insufficient evidence regarding "veracity," an officer's independent verification of some of the information given may in some cases support an inference that the informant is trustworthy. *Spinelli v. United States, supra* at 417–18, 89 S.Ct. 584. If, on the other hand, a tip does not otherwise satisfy the "basis of knowledge" requirement, the tip may nevertheless be found trustworthy if it is sufficiently detailed with respect to the alleged criminal activity to support an inference that the information was obtained in a reliable way. *Id.* at 416–17, 89 S.Ct. 584.

■ On the facts, the *Aguilar* case involved a police informant's tip concerning narcotics transactions, and *Spinelli* concerned a tip regarding a gambling operation. The usefulness of the *Aguilar-Spinelli* standard, however, is not limited to cases involving police informants and sumptuary crimes. But where the mode of analysis developed in those two decisions is applied to new fact situations, the analysis will necessarily be somewhat different.

This is illustrated by our decision in *Galloway v. United States*, D.C.App., 326 A.2d 803 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 47 (1975). There, an "unidentified citizen" warned the police that the occupants of a certain car had a gun. The police, in response, stopped the car and searched it. We found this conduct to be reasonable.

■ Strictly speaking, the "veracity" prong of the *Aguilar-Spinelli* analysis was satisfied but tenuously in the *Galloway* case. The tipster, it is true, was a "citizen," and the courts—ours among them—have presumed that a citizen is prima facie a more credible source than a paid police informant. *See, e. g., Lawson v. United States*, D.C.App., 360 A.2d 38, 39–40 (1976).[3] Nevertheless, it is also true that a citizen who prefers to remain anonymous would seem less reliable than a citizen who is willing to accept personal responsibility for his accusations. *Adams v. Williams, supra* at 146–47, 92 S.Ct. 1921. *See also* La Fave, *Street Encounters and the Constitution: Terry, Sibron, Peters and Beyond*, 67 Mich. L.Rev. 40, 77–78 (1968); Note, *State v. Gerber: Credibility of the Anonymous Informant*, 22 S.D.L.Rev. 222 (1977). Another relevant consideration is the status of the citizen as a victim or eyewitness. A tip from someone who is the prey of a criminal act, or from someone who sees a crime and immediately calls the police, would appear reliable—from the point of view of veracity—for the same reason that spontaneous utterances are considered reliable in other hearsay contexts.

However, the tipster in *Galloway* remained in fact unidentified, and the evidence supporting our conclusion that the informant was an eyewitness was scant. Moreover, police observations independently verifying the tip in *Galloway* went only to the nonincriminating aspects thereof (the car, its color, its tags). *See Spinelli v. United States, supra* at 417–18, 89 S.Ct. 584.

1. The same considerations underlie this requirement as underlie the "hearsay" rule of evidence. Where the trier of fact is not able to evaluate the declarant's veracity by observing his demeanor, other guarantees that the speaker is telling the truth are needed.

2. The same considerations seem to underlie this requirement as underlie the "opinion" rule of evidence. The trier of fact needs to know what factual premises support the informant's conclusions to determine whether these factual underpinnings are well-founded, and the inferences drawn therefrom legitimate.

3. The presumption in favor of the credibility of citizen informants is based upon an assumed absence of ulterior motives. The scepticism with respect to police informants is based partly on the fact that they are generally remunerated in some way, which is thought to taint their motives (although the fact that the informant is remunerated would, presumably, also serve to assure reliability). It also appears that police informants are generally drawn from the criminal milieu, which in itself is an impeaching circumstance. *See* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 765–73 (1974); Comment, *An Informant's Tip as the Basis for Probable Cause*, 20 S.D.L.Rev. 363, 370–1 (1975).

Similarly, the basis of knowledge prong of the *Aguilar-Spinelli* analysis was weak in *Galloway.* There was no direct evidence that the citizen had observed the alleged crime, or that he had obtained his knowledge in a reliable way. Nor did the citizen "describe the accused's *criminal activity* in sufficient detail" that the court could know he was relying on something more than rumor or reputation. *Spinelli v. United States, supra* at 416, 89 S.Ct. 584 (emphasis added).

In spite of the fact, however, that the tip in *Galloway* left much to be desired in terms of strict *Aguilar-Spinelli* concepts of trustworthiness, we held that the police conduct in that case was permissible under the Fourth Amendment, and we do not today depart from that holding. As the *Galloway* court carefully pointed out, the citizen's report in that case was of a rapidly moving street occurrence (*compare Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)) involving a dangerous weapon (*compare Adams v. Williams, supra*).[4] The need for immediate action was, accordingly, more urgent than in *Aguilar* and *Spinelli* where only narcotics and gambling offenses were involved. As one commentator said:

> While one might well argue that the need to detect past crimes is of considerable importance for all forms of criminal activity, the need to prevent crimes from occurring is most compelling as to offenses risking violence, and is least compelling as to offenses without victims or with willing victims.
>
> \* \* \* \* \* \*
>
> Action on the basis of anonymous information, then, should be allowed only in cases involving the risk of "serious personal injury or grave irreparable property damage" and certainly should not be un-

dertaken for "the enforcement of sumptuary laws, such as gambling, and laws of limited public consequence, such as narcotics violations, prostitution, larcenies of the ordinary kind, and the like." [La Fave, *supra* at 58, 78, quoting from *People v. Taggart,* 20 N.Y.2d 335, 340, 283 N.Y.S.2d 1, 6 (229 N.E.2d 581, 584) (1967) (footnote omitted).]

■ In the present case there was no circumstance indicating any compelling need for split-second action. Nor was there any suggestion that the defendants were armed. Consequently, it would not have been reasonable for the police to rely on information which presented significant dangers of untrustworthiness. Here, then, we must require a more stringent showing of compliance with the *Aguilar-Spinelli* guidelines, as we did, for example, in *Nance v. United States,* D.C.App., 377 A.2d 384 (1977). Measured by that standard, we cannot say that the police acted reasonably in relying on the tip in question.

In the first place, we have no information at all regarding veracity, although such information is obviously critical. If the caller was a police informant without a proven track record or an anonymous tipster, the situation might reasonably have warranted further inquiry—perhaps by questioning or by surveillance—but a search would not have been justified. We need hardly add that the patently inadequate showing with respect to veracity was not cured in this case by the police's independent verification of the fact that there was a person in the area indicated wearing a white T-shirt. *See Spinelli v. United States, supra* at 417–18, 89 S.Ct. 584; *Nance v. United States, supra* 377 A.2d at 389–90.

■ As to basis of knowledge, there was here no evidence indicating how the caller obtained her information or on what

---

**4.** Although *Adams* was decided as a "stop and frisk" case, and *Galloway* turned on a question of "probable cause," the two cases are remarkably similar. Both involved tips alleging that someone in a car was carrying a gun. In both cases, there was a weak showing with respect to the veracity of the informant and a still weaker showing with respect to basis of knowl-

edge. *See The Supreme Court, 1971 Term,* 86 Harv.L.Rev. 1, 177–79 (1972). Nevertheless, both courts found that there was no violation of the Fourth Amendment. It is perhaps worthy of note, in this context, that the *Galloway* court relied on several "stop and frisk" holdings in support of this conclusion.

grounds she concluded that the defendants were selling narcotics.[5] Nor did the tip describe the criminal activity in sufficient detail to remedy this defect. Consequently, the second prong of the *Aguilar-Spinelli* analysis was clearly not satisfied. *Nance v. United States, supra* at 387–88.

 Tacitly recognizing the inadequacy of the evidence presented at the suppression hearing, the government argues that on appeal we should take into consideration testimony offered at the trial on the merits. This testimony consists of an off-hand remark by Officer Morgan that prior to commencing his search, he had seen defendant Rushing drop an orange pill.[6] Admittedly, if the statement by Officer Morgan can be considered by this court, and if the statement is given full weight, probable cause for the search and seizure would exist.

Our determination as to how to deal with this piece of evidence is guided by *Masiello v. United States*, 113 U.S.App.D.C. 32, 304 F.2d 399 (1962). In that case, the court wrote as follows:

> In *Carroll* [*v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)] the Supreme Court refused to set aside a conviction on the ground that a pre-trial motion for the return of evidence may have been erroneously denied. Petitioner claimed that the pre-trial hearing failed to establish probable cause for the search during which the evidence was seized. The Supreme Court held it immaterial whether the pre-trial motion was improperly denied since additional testimony establishing probable cause was subsequently presented at trial *and considered* by the trial court in holding the evidence admissible.
>
> In the present case, *it does not appear that the trial court considered* the officers' testimony at trial since it *expressly refused to reconsider* its pre-trial ruling. We should not speculate on how the trial court would have resolved the conflict in testimony between appellant and the officers, and how it would have applied a correct view of the law. In *Carroll* there was no conflict in testimony to be resolved, but a lack of evidence of probable cause at the pre-trial hearing which was supplied at trial.
>
> The unresolved conflict in testimony precludes our affirming the judgment as the Supreme Court did in *Carroll*. [*Masiello v. United States, supra* at 34, 304 F.2d at 401 (emphasis changed).]

The court held that in these circumstances, the judgment should be vacated and remanded for a new determination of the motion to suppress. *See also Bray v. United States*, 113 U.S.App.D.C. 136, 142–43, 306 F.2d 743, 749–50 (1962); *Turk v. United States*, 429 F.2d 1327, 1329, 1331–32 (8th Cir. 1970).

In the present case, as in *Masiello*, the trial court did not reconsider the suppression motion at the trial on the merits. Indeed, under present law in this jurisdiction the trial court could not have reconsidered this issue. *Jenkins v. United States*, D.C. App., 284 A.2d 460, 463–64 (1971); Rauh and Silbert, *Criminal Law and Procedure: District of Columbia Court Reform and Criminal Procedure Act of 1970*, 20 Am.U.L. Rev. 252 (1970). On the other hand, in contrast to *Masiello*, there does not appear to be any conflict of testimony here. We think, nevertheless, that there is reason to believe that Officer Morgan's casual remark at trial may not provide the full story, so that vacation and remand are warranted in this case as well. If, after further evidence is taken, the trial court finds probable cause for the search and ensuing arrest, the judgment of conviction should be reinstated. If,

---

**5.** According to Cicioni's testimony, *after* the initial search he learned that the informant had, in fact, personally observed Rushing and Childs, and was still observing the scene when the officers arrived. However, knowledge obtained by the police after the event is clearly irrelevant in determining the reasonableness of the prior search and seizure.

**6.** At the suppression hearing, Cicioni testified that Officer Morgan had allegedly seen defendant Rushing drop a pill. Cicioni did not, however, say that this had occurred prior to the search. *Cf.* note 5, *supra*.

however, the court decides on remand that there was no probable cause, the case will have to be dismissed.

*It is so ordered.*

GALLAGHER, Associate Judge, dissenting:

This is another case where the government made an indifferent presentation of evidence in a suppression hearing. *See Galloway v. United States*, D.C.App., 326 A.2d 803, 806 (1974) (dissenting opinion). It is apparent that the evidence was available to the government to support beyond question the arrest but it did not adduce it at the hearing, nor did the trial court put the government on its mettle to clarify the situation. While trial judges surely have no prosecutive responsibility and should not assume it, neither are they disinterested observers. There is a middle ground. Be that as it may, we have another needless appeal and a divided court.

Nevertheless, I would affirm this conviction as, to me, it just passes muster. I think we are able to infer from the testimony that the arresting officer observed the dropping of the pill as he approached appellant Rushing before the arrest [1] rather than after it.[2] We are in agreement that this observation, when added to the other evidence, would result in probable cause to arrest.

---

1. Evidence putting this particular question to rest was available to the government at the suppression hearing and this is demonstrated by the fact that the arresting officer specifically so stated when testifying at the trial. This trial testimony, of course, may not be relied upon now to conclude probable cause was established before the arrest.

2. While the testimony to this effect at the suppression hearing was hearsay, it was reliable hearsay. Such testimony is admissible in suppression hearings. *Mitchell v. United States*, D.C.App., 368 A.2d 514, 518 (1977).