Isaac E. **RUTLEDGE**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 12284.

District of Columbia Court of Appeals.

Argued April 4, 1978.

Decided Oct. 19, 1978.

John J. Stanton, Washington, D. C., for appellant.

Charles L. Hall, Asst. U.S. Atty., Washington, D. C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry and Peter E. George, Asst. U.S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

Police officers arrested appellant on the basis of an informant's tip that he was selling narcotics. Appellant contends that the motions judge erred in denying his motion to suppress evidence of a Preludin tablet seized incident to the arrest. We conclude that the arresting officers did not have a sufficient basis supporting their informant's credibility to satisfy the "veracity" prong of the *Aguilar-Spinelli* test for informant-based probable cause determinations. Accordingly, we reverse the order denying suppression of the narcotics evidence.

I. *The Facts; Trial Court Proceedings*

Several days prior to February 11, 1977, a man dropped into the offices of the Vice Unit of the Metropolitan Police Department's Third District "to speak about vice." Sergeant Lawrence Ware engaged in a long discussion with this individual regarding "drug activity in the 14th Street corridor," ascertaining that the man sought employment as an informant and that he had no

pending case against him—"nothing to work off." Because the two could not agree on financial terms, the informant-to-be decided to return later.

On the morning of February 11, 1977, the man returned to Sergeant Ware, agreed to his terms ($20 per arrest), and was "debriefed," i. e., asked about his background and apprised of the nature of the observations and reported data necessary for adequate performance of his function. After the debriefing the informant departed to begin his work.[1]

Later that same morning, Detective Johnny Mathis (who apparently had attended the earlier conference but had less knowledge than Sergeant Ware about the informant's background) received a telephone call from the novice informant, who reported that

> a Negro male [who was] wearing a tan leather waist-length jacket, black pants, [had a] short bush, [was] dark complected, and had soft walking shoes on ⋅. . . like Hush Puppies . . . [and] was carrying a newspaper in his hand . . was selling BAM [and] was standing right in front of the Pig and Pit, on the west side of the street, 1900 block of 14th Street.

According to Detective Mathis, the informant "stated that he saw [the described individual] selling BAM."[2] Detective Mathis requested two colleagues, Detectives Anderson and Thompson, to accompany him to the specified location. On the way he told them of the informant's detailed description and the nature of their mission.

Upon arriving at the scene reported by the informant, the officers spotted appellant standing with another man. Appellant looked like the informant's telephonic portrait. The officers approached to arrest him, then "patted him down."[3] During a search incident to the arrest, the officers found one Preludin tablet in appellant's jacket pocket and $39 in cash.

On February 12, 1977, the government charged appellant with possession of Preludin in violation of D.C.Code 1973, § 33–702(a)(4). After a hearing, the court denied his motion to suppress the evidence. Following conviction by a jury on April 28, 1977, the court sentenced appellant to 180 days in prison, suspended in favor of two-years' probation, conditioned upon his participation in the Regional Addiction Program (RAP).

## II.  The AGUILAR–SPINELLI Standards

■ In cases where a probable cause determination is founded upon data supplied by an informant, rather than on observation by the arresting officer, our point of departure is the two-pronged test announced in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as elaborated in Spinelli v. United States, 393 U.S. 410, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 et seq. (1969). This test must be applied to determine whether the informant's tip shall be deemed trustworthy to the point of establishing probable cause.

First, a reviewing magistrate (in cases where warrants are sought) or the trial court (after warrantless searches and seizures) "must be informed of some of the underlying circumstances from which the informant concluded that" criminal activity was taking or had taken place. Aguilar v. Texas, supra, 378 U.S. at 114, 84 S.Ct. at 1514. Second, the judicial officer must be

---

1. At some stage, Sergeant Ware also learned that the informant had one misdemeanor arrest which had been "nolle prossed," that he was not a narcotics user, and that he was an unemployed, lifelong resident of the District of Columbia.

2. "BAM" is a street term for phenmetrazine, also known as Preludin.

3. As the officers approached, the other man apparently "took off very rapidly." We do not

believe that this ambiguous action by another, which occurred after the officers had already decided to arrest the appellant, bolsters the validity of the probable cause determination here. We therefore decline the government's invitation to supplement the informant's tip with possible evidence of the "guilt-consciousness" of another person. We look solely to the informant's tip and the officers' confirmation of it in evaluating probable cause.

apprised of "some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" In other words, *Aguilar-Spinelli* requires that when probable cause is to be justified by an informant's tip, it must be established by sufficient evidence (1) that the informant had a sound basis for his knowledge of the particular, reported criminal activity, and (2) that the informant himself is a truthful person.[4]

### A. The "Basis of Knowledge" Criterion

■ The record reveals that the informant's tip here was based on personal knowledge acquired by first-hand observation of appellant. Recall that according to Officer Mathis, the informant "stated he saw Mr. Rutledge selling BAM." In addition to this direct evidence of the informant's personal knowledge of the crime, the record provides indirect evidence of the first-hand nature of his knowledge, namely his detailed, accurate description of the appellant's appearance and location. The courts have reasoned that if an informant's report contains detailed, current information, it is probably based on first-hand perception.[5] *See Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. 584; *Rushing v. United States,* D.C.App., 381 A.2d 252, 255 (1977); *Nance v. United States,* D.C.App., 377 A.2d 384, 387 (1977); *Waldron v. United States,* D.C. App., 370 A.2d 1372, 1373 (1977); *Mitchell v. United States,* D.C.App., 368 A.2d 514, 516 (1977). *See also United States v. Malcolm,* D.C.App., 331 A.2d 329 (1975). Such personal observations of a criminal act are the most frequently endorsed ground for

finding an informant's report to be soundly based. *See Aguilar, supra,* 378 U.S. at 113, 84 S.Ct. 1509; *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. 584; *Rushing v. United States, supra,* 381 A.2d at 255–56, 257 n.5; *Nance v. United States, supra; Smith v. United States,* D.C.App., 348 A.2d 891, 892 (1975).

Our duty is to view the evidence "in a commonsense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). We conclude that a trustworthy basis of the informant's knowledge is revealed by the record; the first *Aguilar-Spinelli* criterion is satisfied. We turn, therefore, to the second stage of evaluation: whether the informant himself could be considered credible.

### B. The "Veracity" Criterion

■ The question is, whether it was reasonable—or not—for the arresting officer to conclude, when the informant reported the criminal enterprise, that he "was probably telling the truth." *United States v. Harris,* 403 U.S. 573, 590, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (Harlan, J., dissenting).[6] In answering this question, our focus must be on the extent to which the policemen who received the tip and effected the arrest were aware of the informant's credibility; we are not concerned with credibility factors known to other, uninvolved officials.

■ When Officer Mathis received the phone call from the newly enlisted informant, he was aware that the informant expected remuneration for his services. The government points to this economic

---

**4.** This court has endorsed two shorthand expressions, "basis of knowledge" and "veracity," for the first and second *Aguilar-Spinelli* criteria, respectively. *Nance v. United States,* D.C.App., 377 A.2d 384 (1977). We utilize that terminology in this opinion.

**5.** The police officers' prompt confirmation of the details of the informant's tip with respect to appellant's location and appearance was evidence that the information was current.

**6.** One legal scholar has reasoned that both the evidence indicating the general credibility of an informant and evidence demonstrating the reliability of the particular tip at issue are perti-

nent to the second, "veracity" evaluation. Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L.Rev. 741, 750 (1974). This observation follows logically from *Aguilar's* phrasing of the second criterion: *i. e.,* whether "the informant . . . was 'credible' or his information 'reliable.'" *Id.* 378 U.S. at 114, 84 S.Ct. at 1514. Thus, the factors posited by the government and discussed in this section of our opinion pertain both to the informant's general propensity for honesty and to his truthfulness in this particular instance.

interest as an indication of reliability—of an incentive to tell the truth. We are not persuaded by this argument. We agree with this court's previous conclusion that the expectation of reward for services is an ambiguous variable which very well could furnish reason to be honest and accurate—in the hope of being utilized again—or, conversely, reason to distort or fabricate, in order to earn at least one payment. *Rushing v. United States, supra,* 381 A.2d at 255 n.3. *See Nance v. United States, supra,* 377 A.2d at 389. Nothing in the record demonstrates that this particular informant's financial motivation probably would have yielded trustworthy information.

■ The government next points out two other factors said to indicate credibility: the informant's service to the police was voluntary, and he had no criminal history. By citing the volunteer nature of the informant's service, the government apparently hopes to bring its case within the principal that an unpaid citizen informant is considered "prima facie a more credible source than a paid police informant," *Rushing v. United States, supra,* 381 A.2d at 255, who should be viewed with skepticism. *Nance v. United States, supra,* 377 A.2d at 389. From the standpoint of credibility, however, we perceive that the first-time, volunteer, paid informer is much closer to the typical paid police informant than to the ordinary, unrewarded citizen. At best, the fact that the informant sought such employment tells us nothing about his honesty.

■ As to the informant's lack of a criminal record, we observe that although criminal conduct may reflect negatively upon credibility and reliability, it does not follow that lack of a criminal history necessarily bodes well for veracity. In other words, the absence of evidence of past untruthfulness is of little, if any, aid in assessing present truthfulness. In any event, the record makes clear that Detective Mathis and his fellow officers knew nothing for good or ill about the informant's criminal past. Sergeant Ware, who was absent at the time of the tip and arrest, was the one who had elicited the criminal background information from the informer. *See* note 1 *supra.* Thus, the arresting officers' credibility evaluation, as a factual matter, could not have rested upon appellant's lack of a criminal record.[7]

Finally, we must consider whether, despite insufficient evidence of the informant's general credibility, the arresting officers' confirmation of the informant's description of appellant and his location was enough in itself to satisfy the "veracity" requirement. The cases make clear that this requirement can be met solely by reference to police confirmation of the details reported by the informant indicating criminality; *i. e.,* by the policemen's witnessing suspicious activity which—while not necessarily itself constituting probable cause—corroborates the informant's report of criminal activity to an extent that determination of his reliability need not depend on independent evidence of his general credibility. *See Spinelli, supra,* 393 U.S. at 426–27, 89 S.Ct. 584 (White, J., concurring); *Rushing v. United States, supra,* 381 A.2d at 255; *Nance v. United States, supra,* 377 A.2d at 389; *Waldron v. United States, supra,* 370 A.2d at 1373; *Mitchell v. United States, supra,* 368 A.2d at 519 (Kern, J., concurring). Given this approach, with sufficient corroboration of suspicious activity, even an informant who had not otherwise been proved credible could meet the veracity requirement.

7. Other relevant background features include: employment, personal attributes favoring accuracy of observation and reporting, reputation with others, personal connection with the suspect, any circumstances suggesting probable lack of motivation to falsify, and association with known criminals. *United States v. Harris, supra,* 403 U.S. at 600, 91 S.Ct. 2075 (Harlan, J., dissenting); *Nance v. United States, supra,* 377 A.2d at 389 n.5. We do not believe that the informant's status as a lifelong resident of the District of Columbia, coupled with his unemployment, could lead one to find him "probably honest" in general or in this situation. Additionally, although the record indicates that Detective Mathis did attend the morning "debriefing" session, it was not affirmatively shown that he was aware of even these minimal character details.

In the present case, however, the police, upon arriving at the scene, only confirmed appellant's description and location. *See* Part II.A. *supra*; they did not observe any suspicious activity. They merely saw appellant with another man, who left abruptly. *See* note 3 *supra*. Confirmation of a suspect's apparently innocent activity at the reported scene, while helping establish the informant's "basis of knowledge"—and even, perhaps, enhancing the informant's credibility—is inadequate for determining the reliability of the informant's statement that a crime had been committed. *Nance v. United States, supra*, 377 A.2d at 389.

The cases cited by the government all disclose something more than mere corroboration of innocent activity. Most often they cite evidence of the informant's reliable performance in the past. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958) (paid informant had proved accurate and reliable previously); *Waldron v. United States, supra* (officer knew that informant had performed well for other officers in the past); *Mitchell v. United States, supra* (officers informed by fellow officer of five previously reliable incidents; and inculpatory detail—possession of a gun—confirmed prior to arrest); *Smith v. United States, supra* (informant had proved reliable in the past); *United States v. Malcolm, supra* (informant previously had provided officer with accurate information).

In summary, in the present case the police officers conceded that this newly hired informer had no performance record; he was writing upon a blank veracity slate. Furthermore, the police did not personally confirm, prior to arrest, that appellant was engaging in suspicious activity; they corroborated only innocent details of the informant's report. Absent additional indications of credibility or reliability, we cannot conclude that the second, "veracity" criterion of the *Aguilar-Spinelli* test for probable cause has been met.[8]

8. The government has the burden of establishing probable cause under the *Aguilar-Spinelli*

### III. *Conclusion*

Because the record contains inadequate evidence "that the informant . . . was 'credible' or his information 'reliable,'" *Aguilar, supra*, 378 U.S. at 114, 84 S.Ct. at 1514, we conclude that the police officers did not have probable cause to arrest appellant. We reverse the order denying suppression of the Preludin tablet and set aside appellant's conviction.

*So ordered.*

test. *Nance v. United States, supra*, 377 A.2d at 389.