**Cleveland BRYAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 03–CO–819.**

District of Columbia Court of Appeals.

Argued Aug. 14, 2003.

Decided Sept. 4, 2003.

John Tan, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the motion for summary reversal, for appellant.

Robert J. Feitel, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Catherine J. Motz, Assistant United States Attorneys, were on the motion for summary affirmance, for appellee.

Before REID and GLICKMAN, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

 This appeal presents for our review and decision whether the trial court's bail determination for pretrial detention of an appellant who had been arrested pursuant to a warrant for committing an assault with intent to murder while armed is supported by the record. We note that our review is limited. As we said in *Martin v. United States*, 614 A.2d 51 (D.C.1992), a case involving detention without bond pending trial: "[W]e are merely reviewing [the trial court's] order, not deciding the issue of release de novo. 'Our review function does not permit us to make a different decision anew as long as support (a rational basis) exists for the bail order imposed.'" *Id.* at 53 (quoting *Ireland v. United States*, 406 A.2d 1259, 1260 (D.C. 1979)).[1] D.C.Code § 23–1322(b)(1)(A) provides in pertinent part:

The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in § 23–1321(c) will reasonably assure the appearance of the person as required and the safety of any other person and the community, ... in a case that involves: [a] crime of violence, or a dangerous crime, as these terms are defined in § 23–1331 ....

D.C.Code § 23–1331(4)(D) defines a crime of violence as "assault with intent to commit any offense." According to § 23–1322(c):

There shall be a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community if the judicial officer finds by a substantial probability that the person: (1) Committed a dangerous crime or a crime of violence, as these crimes are defined in § 23–1331, while armed with or having readily available a pistol, firearm, or imitation firearm ....

We examined the "substantial probability" standard in *United States v. Edwards*, 430 A.2d 1321 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), and concluded that: "The legislative history indicates that this standard, higher than probable cause was intended to be equivalent to the standard required 'to secure a civil injunction—likelihood of success on the merits.'" *Id.* at 1339 (citing H.R. REP. No. 91–907, 91st Cong., 2d Sess. 182 (1970)). We rejected "the higher beyond a reasonable doubt standard" for detention proceedings because that standard "historically ... has been reserved for criminal cases, which are punitive in purpose ..., and pretrial detention is not punitive in purpose." *Id.* (internal quotations omitted).

 We now turn to the detention order in the case before us. During the pretrial detention hearing the government presented the testimony of the police detective who was investigating the case. The court concluded after direct and cross-examination of the witness, that "the government

---

1. Unlike our dissenting colleague, we do not view the issue before us as "principally one of law." Under the reasoning of our dissenting colleague, virtually every pretrial detention case may require de novo review, and that certainly is not the thrust of our en banc opinion in *Edwards*.

established by a substantial probability, through the testimony of Detective Francis, that the defendant [appellant] committed the crime of assault with intent to murder while armed on or about January 22, 2003, within the District of Columbia ...." [2] The court further noted that "the defense has not rebutted this presumption." [3] Accordingly, the court ordered appellant held without bond pending the trial or other final disposition.

The record reflects that an eyewitness (referred to as "Witness One" in the warrant), who also admits to being a participant in the shooting, stated that three men, including appellant and himself, were on the scene of the crime that evening. All three men carried loaded guns; the appellant and one other man had nine millimeter pistols, and the third man had a thirty-two caliber pistol. All three men began to shoot at the complainant, from a distance of ten to twenty feet, striking the victim in the leg and in the back of the head where the bullet is still lodged. The victim of the shooting reported the incident to the police, who responded to the scene and found thirty-two shell casings on the same side of the street and in the same location. Twenty-five cartridge casings came from a nine millimeter gun and seven from a thirty-two caliber gun. Witness One also identified the appellant from an array of nine color photographs as one of the shooters. Witness One has known the appellant for at least two years and has seen him three or four times per week over that period. Witness One knew the appellant well and could identify him by his full name and by his nickname.

On appeal, appellant argues that "the hearsay evidence of a single accomplice witness who confessed to involvement in a

shooting ... [and] was under arrest ... [and] had been held in jail for 'awhile' prior to cooperating with the police was insufficient to support a finding that [appellant] committed the shooting by a substantial probability." Appellant further contends that "[o]nce Witness One's status as an accomplice was revealed at the detention hearing, the judge was required to assess the hearsay presentation differently than had the information come from an uninvolved citizen bystander." Appellant relies upon this court's comment in *Hawthorne v. United States*, 504 A.2d 580, 587 (D.C.1986), that "Testimony by an accomplice always carries some incentive to perjury" as well as the Criminal Jury Instructions for the District of Columbia, No. 2.22 (2002), that "the testimony of an alleged accomplice should be received with caution and scrutinized with care."

In response, the government states that the trial court did consider the unreliability of accomplice testimony in concluding that there existed a substantial probability that appellant committed the offense. Specifically, the trial court considered Witness One's role in the crime and noted that "this is a situation where a person does not deflect culpability from themselves and simply falsely accuse someone else where they said I had nothing to do with it and someone else did it. He's acknowledging his own culpability as a shooter and saying that one of the persons that participated was your client [appellant]."

We are unable to agree under the particular circumstances here that the fact that Witness One was an accomplice of appellant in the shooting rendered the evidence in this instance insufficient for the trial court to conclude that there was a substantial probability that the appellant

2. Findings of fact, conclusions of law, and order of detention pending trial, p. 1.

3. Findings of fact, conclusions of law, and order of detention pending trial, p. 3.

committed the charged offense. The "measure for the weight of the evidence of the charged crime ... [is] substantial probability, not clear and convincing evidence." *Jones v. United States*, 687 A.2d 574, 575 (D.C.1996). As we have noted, this standard has been held to be higher than probable cause and may be equated to likelihood of success on the merits prerequisite to securing a civil injunction. *Edwards, supra,* 430 A.2d at 1339. We part company with our dissenting colleague in the application of the substantial probability standard. He asserts that: "On this crucial point of identity, the government offered only a hearsay report of the uncorroborated word of an admitted accomplice to the crime." Yet, in our en banc opinion in *Edwards, supra,* our holding specifically permitted the use of hearsay: "[W]e hold that the government may proceed by the use of proffer and hearsay, subject to the discretion of the judge as to the nature of the proffer and the need for admissible evidence." *Id.* at 1337.

It may well be that at the trial of the instant case the jury will observe as well as hear Witness One testify and the victim, and conclude it cannot find beyond a reasonable doubt that appellant shot the victim with the intent to murder him.[4] However, a pretrial detention proceeding is not a trial but rather a procedure established by the Legislature to protect the community and its citizens for the relatively brief period of time prior to trial in those relatively rare cases where the judicial officer concludes after a hearing there is a "sub-stantial probability" that the accused has committed an assault with intent to murder while armed. The Legislature has expressly stated that at a pretrial detention hearing "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." D.C.Code § 23–1322(d)(4). Indeed, this court in *Edwards, supra,* 430 A.2d at 1334, has recognized that in the statutorily-created pretrial detention proceeding "[t]he information presented to the judicial officer by either the government or the defense ... 'need not conform to the rules pertaining to the admissibility of evidence in a court of law.'" In *Edwards,* we noted "the limited function of a pretrial detention hearing, *i.e.,* to determine the appropriateness of detention ... pending a trial on the charges with the full panoply of criminal trial rights, weighs in favor of a simplified hearing." *Id.* at 1337.

In the instant case, the trial court had a statement by the victim that he was fired upon and still had a bullet lodged in his skull; that the police discovered more than 30 spent shells from two different caliber weapons at the scene of the alleged crime; and that Witness One admitted that he himself *and* appellant were two of the three shooters. Under these particular circumstances, we conclude that a rational basis exists to support the trial court's finding that there is a substantial probability that appellant has committed the crime of assault with intent to murder while armed.[5]

---

4. It should be noted that "[w]e have previously declared that a conviction may rest solely on the uncorroborated testimony of an accomplice in this jurisdiction." *Price v. United States,* 531 A.2d 984, 986 (D.C.1987) (citation and internal quotations omitted).

5. The dissent concludes (at 395) that "The government's bare-bones presentation left the [motions] judge without a sound basis to con-clude that a jury would be likely to credit the testimony of this *compromised* witness at trial." (Emphasis added.) Such conclusion rests entirely upon the speculation that at trial the jurors would disbelieve an eyewitness who not only participated in but also admitted to the crime with which appellant is charged. As the motions judge emphasized: "He [the eyewitness] made a positive identification.

Accordingly, since there is an unrebutted presumption "that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community," the order of pretrial detention must be and is

*Affirmed.*

GLICKMAN, Associate Judge, dissenting:

In ordering Cleveland Bryan detained without bond until his trial, the motions judge relied on a statutory presumption of dangerousness. That presumption properly arises only when the judge is able to find by a "substantial probability" that the defendant committed a crime of violence while armed with a firearm. *See* D.C.Code § 23–1322(c) (2001). A higher standard of proof than probable cause, "substantial probability" calls upon the judge to determine after an adversary hearing whether the prosecution is likely to succeed in proving the charged offense at trial. This appears to be the first case in which this court has been called upon to apply the "substantial probability" standard. In my view this higher standard of proof was not met in this case, where there was no evidence linking Bryan to the shooting in question beyond uncorroborated statements that an admitted accomplice to the crime had made to police under undisclosed circumstances after "he had been in jail for awhile" following his arrest. I therefore conclude that the detention order is not "supported by the proceedings below," *see* D.C.Code § 23–1324(b) (2001), and I would grant Bryan's motion for summary reversal.

The majority opinion reaches a different conclusion by applying an unduly lenient standard of review that our cases have rejected. As a result, the opinion glosses over the question presented, which is how a hearsay accusation the law presumes to be untrustworthy can, without material corroboration, constitute a "substantial probability" that the defendant is guilty. The majority opinion pays lip service to the heightened "substantial probability" standard but fails to take it seriously as a statutory requirement. Instead the opinion ignores the critical distinction between a substantial probability and probable cause and abdicates our responsibility as an appellate court to evaluate the sufficiency of the evidence to meet the statutorily-imposed stricter standard of proof.

I.

Cleveland Bryan is a seventeen-year-old youth who is being charged as an adult with assault with intent to murder while armed for the shooting of Yoseph Dagaye. After Bryan was taken into custody pursuant to an arrest warrant that was issued on July 17, 2003, the government moved for his detention without bond pending trial. At the detention hearing, the government offered the testimony of a single witness, Detective James V. Francis. Detective Francis adopted the arrest warrant affidavit (which had been written by another detective, who did not testify) and supplied additional information. No other evidence was presented or proffered in support of the government's motion, and Bryan did not testify or present evidence of his own. The motions judge credited the affidavit and Detective Francis's testimony, and I summarize the material facts in accordance with the judge's findings. *See* D.C.Code § 23–1322(g)(1).

The shooting occurred on the evening of January 22, 2003, some six months before Bryan was charged. The complainant, Yo-

He was within 10 feet.... There is no reason on this record why he would falsely accuse a person that he's known so well for two years as being a participant in this shooting."

seph Dagaye, reported that he and another person were sitting in a car on 18th Street in Southeast Washington, D.C., waiting to pick up Dagaye's girlfriend. Dagaye noticed several persons standing nearby, one of whom approached and reached into his waistband as if he were about to pull out a gun. Dagaye immediately sped off to avoid being shot. As he did so, he heard several gunshots and discovered he had been struck in the head and leg. Dagaye drove to a police station and reported the shooting. He was then taken to a hospital where he was treated and released. Crime scene search officers recovered twenty-five nine-millimeter cartridge casings and seven thirty-two caliber cartridge casings at the scene of the shooting. The motive for the shooting is unknown, or, at least, was not revealed at the detention hearing.

To connect Bryan to the shooting, the government relied exclusively on the word of a single witness to the incident.[1] This witness was referred to as "Witness One" and not otherwise identified. According to Detective Francis and the arrest warrant affidavit, Witness One had identified Bryan to the police by his nickname and photograph as one of three persons who shot at Dagaye with either a nine-millimeter or a thirty-two caliber pistol. (Dagaye himself did not know how many people fired on him, and his companion did not provide that information either.) Witness One told the police that he knew Bryan from around his neighborhood, had seen him three or four times a week over a two year period, and knew his real name as well as his nickname. The government

presented no further evidence of any relationship between Witness One and Bryan or any reason why either of them would have attacked Dagaye. Detective Francis stated that he was unaware of any reason why Witness One would "have a bias against" Bryan. But as Detective Francis revealed for the first time on cross-examination, Witness One was not simply an eyewitness to the shooting. Witness One had admitted to the police that he himself was one of the shooters.[2]

Witness One did not testify in person at the detention hearing, and the government did not furnish the motions judge with his testimony before the grand jury or other recorded statements that Witness One had made. Virtually nothing was disclosed concerning Witness One's personal characteristics; the judge was not informed, for example, about whether Witness One was a juvenile or an adult, whether he had a criminal record, or whether he was a member of a gang. The government likewise presented no evidence to confirm the reliability of Witness One's identification of Bryan as his accomplice in the shooting; that accusation remained uncorroborated. Nor did the government disclose the circumstances under which Witness One had told the police about his and Bryan's involvement in the shooting. Detective Francis testified only that Witness One had not initiated his contact with the police; that he was already "under investigation for criminal activity" when he told the police about Bryan; and that he had been arrested and "in jail for awhile" by the time Detective Francis spoke with him. The government did not disclose what, if

---

1. Dagaye and his companion did not identify Bryan, and no physical evidence tied Bryan to the shooting.

2. The affidavit in support of the warrant for Bryan's arrest concealed the fact that Witness One was himself one of the shooters. The affidavit misleadingly described Witness One as if he was a mere bystander whose "attention was directed to the west side of 18th Street after hearing multiple gunshots" and who "then observed ... individuals known to it [sic]" shooting at Dagaye.

any, criminal charges had been threatened or levied against Witness One; the motions judge inferred that Witness One "apparently had his own legal difficulties," but the judge was not told what those difficulties were. As the motions judge noted in discussing the gaps in the record before him, Detective Francis was not asked and did not say whether Witness One had been promised or was seeking more lenient treatment or whether he had been given "inducements" in connection with his "pending cases" in exchange for his cooperation with the police.

In evaluating the strength of the government's case against Bryan, the motions judge appreciated that since Witness One was an accomplice to the shooting, he might have had a motive to lie to the police about Bryan's participation in order to help himself. Nonetheless, the judge reasoned that since Witness One had admitted his own culpability,[3] he was not trying to deflect his guilt onto someone else, and—"at least on this record, at this earlier stage of the investigation"—no "particular bias motivation" to make a false accusation against Bryan had been shown. The judge therefore found that the government had shown by a substantial probability that Bryan had committed the offense of assault with intent to murder while armed with a firearm. "And based upon the presumption that garners to that finding,"[4] the judge concluded that the government had met its ultimate burden of showing by clear and convincing evidence

that no condition or combination of conditions of release would reasonably assure the safety of the community. The judge therefore granted the government's motion and ordered Bryan detained without bond pending his trial.

## II.

### A.

On appeal, this court must affirm an order of pretrial detention "if it is supported by the proceedings below. If the order is not so supported, the court may remand the case for a further hearing, or may, with or without additional evidence, order the person released pursuant to [D.C.Code] section 23–1321(a)." D.C.Code § 23–1324(b). "In general," therefore, "our review of a preventive detention order is limited." *Pope v. United States*, 739 A.2d 819, 824 (D.C.1999). We defer to the motions judge's factual findings unless they are clearly erroneous, and so long as the evidence "provide[s] sufficient support for the trial court's order," we will not substitute our judgment of a defendant's dangerousness for that of the motions judge. *Martin v. United States*, 614 A.2d 51, 53 (D.C.1992); *accord, Pope, supra.*

Where the question raised in a pretrial detention appeal "is principally one of law," however, "we review *de novo* the [motions] judge's disposition of it." *Pope*, 739 A.2d at 825; *see also Tyler v. United*

---

3. Actually, the record is not clear as to the extent to which Witness One did acknowledge his culpability. Witness One's full statement (or statements) to the police was not introduced in evidence or reported by Detective Francis, who testified only that Witness One had admitted being one of the shooters. The record does not indicate whether Witness One claimed any justification for his actions or otherwise minimized his role.

4. Bryan had a two-year-old juvenile adjudication for destruction of property. The motions judge accepted counsel's proffer that the property in question was a coffee table figurine belonging to Bryan's mother. When he was arrested in July 2003 on the present charge, Bryan tested positive for marijuana. The motions judge properly took these facts into consideration, but it is clear that they were not material to the judge's decision to detain Bryan.

*States,* 705 A.2d 270, 278 (D.C.1997) (en banc). "Because preventive detention implicates basic constitutional liberties, especially careful review by this court is warranted." *Pope, supra.*

The question raised in this appeal is whether the evidence before the motions judge was sufficient to permit a finding of "substantial probability" that Bryan committed the offense with which he is charged. As in *Pope,* "only a single witness testified, and the facts of record, though second-hand, are essentially undisputed." 739 A.2d at 824. The issue of evidentiary sufficiency is therefore a legal issue that we review *de novo,* just as it is when we review the sufficiency of the evidence to sustain a trial court's determination of probable cause or reasonable articulable suspicion or its ruling on a motion for a judgment of acquittal. *See, e.g., Thompson v. United States,* 745 A.2d 308, 313 (D.C.2000) ("Determinations of reasonable suspicion and probable cause are reviewed *de novo* on appeal.") (citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)); *In re R.M.C.,* 719 A.2d 491, 494 (D.C.1998) (same); *United States v. Bamiduro,* 718 A.2d 547, 550 (D.C.1998) (in evaluating whether a motion for a judgment of acquit-

tal should have been granted, "[t]his court reviews the sufficiency of the evidence *de novo,* applying the same standard as the trial court").[5]

**B.**

The government moved for pretrial detention under D.C.Code § 23–1322 (2001). In a case involving a crime of violence,[6] such as this one, that statute permits the judge to detain a defendant without bond if the judge finds by "clear and convincing evidence" after a hearing that the defendant is dangerous—that is, that no conditions of release "will reasonably assure ... the safety of any other person and the community." D.C.Code § 23–1322(b)(2). We have held that in "most, if not all, cases," the clear and convincing evidence requirement means that a detention order cannot be based solely on a finding of probable cause and the facts and circumstances of the charged offense. *Pope,* 739 A.2d at 827 (construing the similar requirements or pretrial detention in D.C.Code § 23–1325(a)). Usually, other factors indicative of dangerousness, such as the defendant's record of past violent conduct, also must be shown in order to justify preventive detention.[7]

**5.** The majority opinion thus errs in stating that we must affirm the order in this case so long as it has a "rational basis." *Ante* at 384. That statement is at best unhelpful and misleading. The cases that the majority cites for a deferential "rational basis" standard of review are inapposite. The "rational basis" standard is lifted from *Ireland v. United States,* 406 A.2d 1259 (D.C.1979), a case that did not even involve the pretrial detention statute, sufficiency of the evidence against the defendant, or a determination of the defendant's dangerousness. The question in *Ireland* was simply whether the trial court had reasonably required a surety bond instead of a third-party custodian to ensure that the defendant would appear at trial and not flee. And in *Martin,* 614 A.2d at 53, this court applied the "rational basis" test to the trial

court's detention order *only after* determining, *as a matter of law,* that the evidence on which the trial court relied was properly considered and legally sufficient to support detention.

**6.** The term "crime of violence" is defined to include an assault with intent to commit any offense as well as an assault with a dangerous weapon. *See* D.C.Code § 23–1331(4) (2001).

**7.** Thus, in determining whether the government has met its burden to show dangerousness by clear and convincing evidence, the judge's "calculus must include not only the nature and circumstances of the offense charged, but also, *inter alia,* the weight of the evidence against the defendant; the defen-

Even in the absence of such other factors, however, the pretrial detention statute provides for a rebuttable presumption of dangerousness if the judge finds by a "substantial probability" that the defendant committed a crime of violence while armed with a pistol or firearm. D.C.Code § 23–1322(c)(1). This appeal turns on the proper interpretation and application of this statutory presumption and specifically of the term "substantial probability." In construing that term, we must bear in mind that the presumption functions as a surrogate for clear and convincing evidence of dangerousness. Although a "substantial probability" does not itself equate to "clear and convincing evidence," see *Jones v. United States*, 687 A.2d 574, 575–76 (D.C.1996),[8] we must construe the statutory language so as not to allow the presumption to undermine or lower the ultimate clear and convincing evidence standard of proof. "Preventive detention statutes restrict the liberty of the citizen, and they must be strictly construed to ensure that defendants are not detained without bond unless the lawmaker has clearly said they should be." *Pope*, 739 A.2d at 825 (internal quotation marks and citations omitted).

The term "substantial probability" dates from the original version of the pretrial detention statute that Congress enacted in 1970. The original version of the statute did not include the rebuttable presumption; the provision establishing that presumption was not added until 1989. Rather, the original statute, former D.C.Code § 23–1322(b)(2)(C) (1973), required the judge to find "a substantial probability that the person committed the [charged] offense" in almost all cases in which the government moved for pretrial detention based on dangerousness.

By insisting on a "substantial probability," Congress deliberately adopted a standard of proof higher than probable cause in order "to minimize so far as practicable the possibility of detaining defendants prior to trial who are innocent of the charge lodged against them." H.R. Rep. No. 91–907, at 182 (1970). "Probable cause" is established when the known facts and circumstances are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (internal quotation marks and citations omitted); *see also Ornelas*, 517 U.S. at 695–696, 116 S.Ct. 1657. Probable cause does not signify a preponderance of the evidence; still less, proof beyond a reasonable doubt. In contrast, the "substantial probability"

---

dant's history and criminal record, if any; his community ties and resources; whether the defendant was on parole, probation, or release pending trial at the time of charged offense; and the danger that the defendant's release would pose to any person in the community." *Pope*, 739 A.2d at 827; *see also* D.C.Code § 23–1322(e). Because a defendant's past conduct is considered an important predictor, "[s]ubstantial weight must ... be accorded to the presence in (or absence from) the defendant's record of convictions of dangerous crimes or a history of violent conduct." *Pope, supra.*

**8.** In addition to the weight of the evidence, the judge must take into account the nature and circumstances of the offense and any other relevant factors in order to determine whether there is clear and convincing evidence of dangerousness. The clear and convincing evidence standard "applies to the ultimate determination of dangerousness which the trial court must make, not to each individual fact on which the court relies. 'The sum of an evidentiary presentation may well be greater than its constituent parts.'" *Lynch v. United States*, 557 A.2d 580, 582 n. 5 (D.C. 1989) (en banc) (quoting *Bourjaily v. United States*, 483 U.S. 171, 180, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

standard "was intended to be equivalent to the standard required 'to secure a civil injunction—likelihood of success on the merits.'" *United States v. Edwards*, 430 A.2d 1321, 1339 (D.C.1981) (en banc) (quoting H.R. REP. No. 91–907 (1970)). The "substantial probability" standard requires the motions judge to make "an informed estimate of whether the government will prove the charge at trial," when the standard will be proof beyond a reasonable doubt. *Edwards*, 430 A.2d at 1338 n. 42. A probability is more than a possibility; it is a likelihood. A substantial probability is a substantial likelihood.

When the Council of the District of Columbia added the rebuttable presumption to D.C.Code § 23–1322, initially as subsection (b–1), the Council chose to retain the "substantial probability" test. *See* D.C. Law 8–19, § 2(a), 36 D.C.Reg. 2844 (1989); D.C. Law 8–120, § 2(a), 37 D.C.Reg. 24 (1990). That choice evidently was a considered one, for when the Council re-examined the pretrial detention statute in 1992, the Council rejected a bill that "would have lowered the threshold showing required to trigger a rebuttable presumption from substantial probability to probable cause." *Pope*, 739 A.2d at 826. The Committee on the Judiciary decided against this change

> because it would be too great an erosion of constitutional safeguards. The "probable cause" standard is too low and thus, would lead to detention in many cases where there is no threat to the safety of the community.

COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON THE JUDICIARY, REPORT ON BILL 9–360, THE BAIL REFORM AMENDMENT ACT OF 1991, at 6 (Jan. 23, 1992), quoted in *Pope*, *supra*.

In light of this legislative history and the plain meaning of the words, our cases have consistently recognized that "substantial probability" is a meaningfully higher standard of proof than probable cause. *See Pope*, 739 A.2d at 827 n. 18; *Jones*, 687 A.2d at 574 n. 1; *Edwards*, 430 A.2d at 1339. To rely on the rebuttable presumption in D.C.Code § 23–1322(c), the judge must make an informed judgment based on the evidence adduced at the detention hearing that the government is substantially more likely than not to prove its criminal charges at an eventual trial.

This does not mean that the government must call its key witnesses to testify or make a full, elaborate evidentiary presentation in order to satisfy its burden of proof. We have cautioned "against permitting a pretrial detention hearing to turn into a trial of the indicted offense or a means of discovery." *Tyler*, 705 A.2d at 278. "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." D.C.Code § 23–1322(d)(4). The government may meet its burden of proof with hearsay or proffer in lieu of live testimony. *See Lynch*, 557 A.2d at 582; *Edwards*, 430 A.2d at 1334, 1338. The government has a strong interest in preventing the "premature discovery" of its witnesses and in protecting their "emotional and physical well-being" by not calling them to testify in an adversary proceeding in advance of trial. *Edwards*, 430 A.2d at 1338. With adequate preparation the government can take advantage of the relaxed rules of evidence and still present the substantiating facts it needs to present in order to meet its burden of proof.

By the same token, however, relaxed rules of evidence do not mean any relaxation of the standard of proof. This is a point that the majority opinion fails to appreciate. The motions judge is not supposed to be oblivious to the quality of the evidence on which the government chooses

to rely. On the contrary, the "judge may, of course, consider the hearsay character of the government's evidence in determining whether a clear and convincing showing has been made." *Lynch*, 557 A.2d at 582 n. 6. The "judge may, and in appropriate cases we are confident will, require that the hearsay evidence be buttressed by otherwise admissible evidence to meet the clear and convincing standard," or else find the proof wanting. *Id.; accord, Edwards*, 430 A.2d at 1334 ("[H]earsay evidence may be presented, although the court may require direct testimony if dissatisfied with a proffer."). "As with any other situation where the trial court is required to hold a hearing, it is within the trial court's sound discretion to determine the appropriate scope and extent of evidentiary presentations and cross-examination, in light of the proffer made and the trial court's assessment of the evidence developed at the hearing." *Tyler*, 705 A.2d at 277–78. "The clear mandate of the statute, however, does not permit the trial court" to disregard the high standard of proof to which the government is held or to treat that standard as nothing more than a ritual incantation. *Id.* at 278.

## C.

The question in this appeal is thus whether the government presented sufficient evidence to show that it is likely to prove Bryan guilty at his future trial. There is no dispute that the government will be able to prove beyond a reasonable doubt that *some person or persons* committed a crime of violence—the charged assault with intent to murder, I presume—while armed with a pistol or firearm. But whether the government is likely to prove that Bryan was one of those persons is a different matter. On this crucial point of identity, the government offered only a hearsay report of the uncorroborated word of an admitted accomplice to the crime.

Bryan argues that this evidence failed even to establish probable cause to believe that he was involved in the Dagaye shooting. Bryan cites *Gatlin v. United States*, 117 U.S.App. D.C. 123, 128, 326 F.2d 666, 671 (1963), for the proposition that probable cause cannot be found "based solely on information obtained from an accomplice whose reliability is neither alleged nor established." *See also Wong Sun v. United States*, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), on which the *Gatlin* majority relied. On the record of this case, the question of probable cause is a close one. *See generally* 2 W. LaFave, Search and Seizure § 3.3(c) (3d ed.1996). Despite *Gatlin*, I lean to the view that probable cause was established, since Witness One's reported acknowledgment of his own culpability was some evidence of his veracity. *But see* footnote 3, *supra.* The issue before us, however, is whether the evidence satisfied the higher "substantial probability" test.

Accomplices are not viewed in the same benignant light as ordinary witnesses. It is universally recognized that "accomplice testimony is inherently less reliable than that of other witnesses." *Price v. United States*, 531 A.2d 984, 986 (D.C.1987) (quoting *United States v. (Lloyd) Lee*, 165 U.S.App.D.C. 50, 57, 506 F.2d 111, 118 (1974)); *accord, (Millie) Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (declaring that accomplices' confessions that incriminate defendants are "presumptively unreliable"); *Doret v. United States*, 765 A.2d 47, 66 (D.C.2000) ("suspect at best") (quoting *United States v. Hammond*, 681 A.2d 1140, 1145 (D.C.1996)). The reason for the courts' gingerly handling of uncorroborated accomplice accusations is simple. "The need for careful scrutiny of an uncorroborated accomplice reflects the danger,

underscored by experience, that he may be giving a false account to secure lenient treatment." *(Lloyd) Lee,* 165 U.S.App. D.C. at 58, 506 F.2d at 119. "[T]he essential ground for suspecting the testimony of accomplice[s] is that they might have 'reason to expect that their sentence might depend upon their testimony.'" *Id.,* 165 U.S.App.D.C. at 58 n. 24, 506 F.2d at 119 n. 24 (citation omitted). *Cf. Rushing v. United States,* 381 A.2d 252, 255 n. 3 (D.C. 1977) ("The presumption in favor of the credibility of [ordinary] citizen informants is based upon an assumed absence of ulterior motives."). Of course, inasmuch as the accomplice witness concededly is "drawn from the criminal milieu," that "in itself is an [additional] impeaching circumstance." *Id.*

For these reasons, the standard jury instruction in this jurisdiction cautions that "[t]he testimony of an alleged accomplice should be received with caution and scrutinized with care." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.22 (revised 4th ed.2002). This instruction, which presumably would be given upon request at Bryan's trial, goes on to warn the jury that "[i]f the testimony of an alleged accomplice is not supported by other evidence, you may convict a defendant upon that testimony only if you believe that it proves the guilt of the defendant beyond a reasonable doubt." *Id.*

The motions judge was not unaware of these concerns, but he dismissed them on two grounds: (1) Witness One, the accomplice in this case, had implicated himself as well as Bryan, and (2) no affirmative evidence of any bias against Bryan on the part of Witness One was shown. While these grounds may suffice to support a finding of probable cause, it seems to me that they do not suffice to support a conclusion that the government is likely to prevail at trial. Without information re-

garding the circumstances under which Witness One inculpated himself, the motions judge was not in a position to evaluate Witness One's trustworthiness. And self-inculpation is not a reliable talisman of trustworthiness when it comes to the admitted accomplice's accusations against others, for those accusations still may be "merely attempts to shift blame or curry favor." *Doret,* 765 A.2d at 66 (internal quotation marks and citations omitted). "One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." *Id.* (internal quotation marks and citations omitted). It is precisely the fact that "an accomplice's own 'confession of the soul' carries a 'ring of truth' ... that impels the court to caution the jury of the dangers of accomplice testimony." *(Lloyd) Lee,* 165 U.S.App.D.C. at 58, 506 F.2d at 119.

Nor is it appropriate to find Witness One trustworthy merely because the record contains no affirmative evidence of bias on his part. Absence of evidence is not evidence of absence. "The prospect of immunity or leniency 'is usually denied, and may not exist; but its existence is always suspected.'" *Id.* (quoting T.J. WIGMORE, EVIDENCE § 2057, at 322 (3d ed.1940)). "And so even though there is no testimony in the particular record that the accomplice is testifying out of a prospect of leniency or immunity, the probability that accomplices as a class are likely to do so warrants" the caution reflected in the standard jury instruction on accomplice testimony, "as a reflection of general judicial experience—when the accomplice is uncorroborated." *(Lloyd) Lee,* 165 U.S.App.D.C. at 58, 506 F.2d at 119.

The government argues that Witness One *was* corroborated—he told the police that the persons who shot at Dagaye fired nine-millimeter and thirty-two caliber pis-

tols, and that was confirmed by the expended cartridge casings recovered from the scene. This is not material corroboration, however. It does not corroborate Witness One's accusation against Bryan; rather, it corroborates the fact that Witness One indeed was an accomplice in the shooting, which is the very thing that makes it necessary to view his accusation against Bryan with distrust.

In asking the motions judge to rely so heavily on that accusation, the government assumed the burden of presenting evidence to overcome that distrust. Such evidence could have taken many forms. Witness One himself did not need to testify; though if he had done so, it would have enabled the motions judge to evaluate his credibility at first hand. *Cf. Mathis v. United States,* 513 A.2d 1344, 1350 (D.C. 1986) (noting that even "[a] conviction may rest solely on the uncorroborated testimony of an accomplice in this jurisdiction.") (citing *(Lloyd) Lee, supra*). Assuming that the government had good reason not to expose Witness One to defense cross-examination at this early stage in the prosecution, it had to find other ways to bolster his accusation of Bryan to meet its burden of proof. The government could have presented evidence corroborative of Bryan's participation in the shooting or otherwise supportive of Witness One's veracity— such as evidence concerning the circumstances under which Witness One confessed and implicated Bryan. As already mentioned, this evidence did not have to be in the form required for admission at trial.

By not presenting evidence to corroborate Witness One's accusation of Bryan, the government asked the motions judge to accept on faith the credibility of a presumptively suspect and unreliable witness—a witness about whom the judge was told virtually nothing beyond the fact of his involvement in the crime charged. The government's bare-bones presentation left the judge without a sound basis to conclude that a jury would be likely to credit the testimony of this compromised witness at trial. I therefore would hold that the government was not entitled to a judicial finding by the requisite "substantial probability" that Bryan committed the crime of violence with which he is charged. It follows from my view that the statutory presumption of dangerousness could not be drawn, and without it the order of pretrial detention should not stand.